**Graham M. Sweitzer, OSB #025866**
**graham.sweitzer@harrang.com**
HARRANG LONG P.C.
111 SW Columbia St., Suite 950
Portland, OR 97201
Telephone:     (503) 242-0000
Facsimile:      (541) 686-6564

**Joel A. Ready,** *pro hac vice*
**joel@cornerstonelaw.us**
**Dominic Mayle,** *pro hac vice forthcoming*
**dominic@cornerstonelaw.us**
Cornerstone Law
519 Walnut Street
Reading, PA 19601
Telephone:  610-926-7875
Facsimile:  484-930-0054

Of Attorneys for Defendant TEACHERS COUNCIL, INC.,
a foreign business corporation

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **JANE DOE and JOHN ROE, individuals,** | Case No. 3:23-cv-1747 |
| Plaintiffs, | **DEFENDANT TEACHERS COUNCIL, INC.'S FRCP 12(B) MOTIONS TO DISMISS** |
| vs. | |
| **TEACHERS COUNCIL, INC., a foreign business corporation,** | **Request For Oral Argument** |
| Defendant. | **Request For Jury Trial** |

Page 1 – **DEFENDANT TEACHERS COUNCIL, INC.'S FRCP 12(b) MOTIONS TO DISMISS**

### LR 7-1 CERTIFICATION

Pursuant to Local Rule 7-1, the undersigned counsel for Defendant Teachers Council, Inc. certify that they conferred by telephone with counsel for Plaintiffs regarding the issues raised in the below motions. Plaintiffs oppose the motions.

### MOTIONS

Pursuant Federal of Civil Procedure 12(b), Defendant Teachers Council, Inc. ("Defendant" or "Teachers Council") moves the Court for an order dismissing Plaintiff's Complaint.

This motion is supported by the points, authorities and argument below.

### OVERVIEW OF PLAINTIFF'S ALLEGATIONS

Plaintiffs, citizens of France, complain of their visa status. Plaintiff Doe is a teacher who gained entry to the United States on a J-1 teaching-exchange visa, where educators from abroad visit the United States as part of a diplomatic mission to bring American students into closer contact with other cultures. (Dkt. No. 1, *passim*; and see citations in discussion *infra*). Plaintiff Roe held a derivative J-2 visa to which he was entitled by marriage to the holder of a J-1 visa. (Dkt No. 1, ¶ 12). Under federal law, foreign nationals qualified as teachers can visit the United States to work full-time as teachers on J-1 visas. ((Dkt. No. 1, ¶ 11); and see citations in discussion *infra*).

Plaintiffs have styled this as an anti-discrimination lawsuit under the Americans with Disabilities Act ("ADA"). (Dkt. No. 1, ¶ 1). However, Plaintiffs were never employed by Defendant Teachers Council. Instead, Teachers Council is a visa-sponsorship entity charged by the U.S. Departments of State and Homeland Security to screen and support proper applicants for J-1 visas. (Dkt. No. 1, ¶ 17; and see citations *infra*). Teachers Council did sponsor both Doe and Roe. (Dkt. No. 1, ¶ 19). What Doe wanted out of her relationship with Teachers Council was continued sponsorship of her J-1 visa, which the program requires. (Dkt. No. 1, ¶¶ 13, 16). This sponsorship would then enable Roe to hold his J-2 visa. (Dkt. No. 1, ¶ 14).

Plaintiffs allege that Teachers Council "places" teachers it sponsors with schools in the United States. (Dkt. No. 1, ¶ 18). This is incorrect. As Plaintiffs acknowledge later in their Complaint, Teachers Council instead works with its teachers to help them locate schools. (Dkt. No. 1, ¶ 42). Indeed, Teachers Council's agent and employee is alleged to have advised Doe she could pursue whatever teaching position she preferred. (Dkt. No. 1, ¶ 43). Finally, Plaintiffs refer to Doe finding her own employment opportunities, independent from Teachers Council (Dkt. No. 1, ¶ 58). Doe clearly did not depend on Teachers Council for job placement.

Teachers Council withdrew Doe's sponsorship status. (Dkt. No. 1, ¶ 22). This occurred after she was terminated in an independent act by her host school, International Leadership Academy, over a dispute regarding pay. (Dkt. No. 1, ¶ 39). Plaintiffs' version of the inciting event is that Doe had a "mental health crisis" that led her to be hospitalized. (Dkt. No. 1, ¶ 53). This is the disability she posits. (Dkt. No. 1, ¶ 56). However, nowhere in the pleading do Plaintiffs state they informed Teachers Council of this alleged disability prior to the termination, from which followed the withdrawal of sponsorship.

Plaintiffs baldly assert, without factual support, that Teachers Council is an "employment agency" within the meaning of an ADA claim. However, "employment agencies" are defined as parties "regularly undertaking . . . to procure employees for an employer or to procure for employees' opportunities to work for an employer." *Ass'n of Mexican-American Educators v. California*, 231 F.3d 572, 575 (9th Cir. 2000). Plaintiffs do not allege that Teachers Council is affiliated with any single employer to drive potential employees to that employer. Rather, they describe how it "generates a 'comprehensive and compelling Placement Profile' for job seekers[.]" (Dkt. No. 1, ¶ 26). But that is it. Teachers Council generates an application package that applicants can use when they apply. Nowhere do Plaintiffs plead facts to show Teachers Council actually selected for Doe a particular place of employment or funneled her into any location. In essence, calling Teachers Council an employment agency because they actualize an application package would be to call every friend who helps someone prepare a resume an "employment agency." In fact, Teachers Council's primary function in sponsorship was not

Page 3 – **DEFENDANT TEACHERS COUNCIL, INC.'S FRCP 12(b) MOTIONS TO DISMISS**

selecting for Doe an employer but ascertaining whether she meets the Government's standards for admission to the J-1 program. (Dkt. No. 1, ¶¶ 33-36). As such, Plaintiffs have failed to allege facts that could allow her establish how Teachers Council meets the definition of an "employment agency."

## STANDARD OF REVIEW

In an FRCP 12(b) motion, the Court must determine whether Plaintiffs can state a claim that would entitle them to relief. *Sonner v. Premier Nutrition Corp.*, 49 F.4th 1300, 1303 (9th Cir. 2022). FRCP 12 requires the pleader to state sufficient facts to establish the right to relief. *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1175 (9th Cir. 2021).

The facts pled must make the claim plausible. *Waln v. Dysart Sch. Dist.*, 54 F.4th 1152, 1164 (9th Cir. 2022). To this end, Plaintiffs must assert more than a sheer possibility that the challenged conduct violates the law. *Id*.

While factual statements are accepted as true, with all reasonable inferences favorable to the Plaintiffs, legal conclusions are not accepted. *Id*. The Complaint must contain well-pled facts, not mere conclusions. *Best Carpet Values, Inc. v. Google, LLC*, 90 F.4th 962, 968 (9th Cir. 2024)

## POINTS AND AUTHORITIES

**I.      Plaintiffs fail to establish personal jurisdiction over Defendant**

Plaintiffs' Complaint fail to establish this Court's personal jurisdiction over Defendant Teachers Council. As such, Defendant moves to dismiss the Complaint under FRCP 12(b)(2). *E.g.*, *Boschetto v. Hnasing*, 539 F.3d 1011, 1015 (9th Cir. 2008).

Teachers Council is not incorporated in Oregon and does not have its principal place of business in Oregon. (Dkt. 1, ¶ 4). "A corporation is at home in its place of incorporation and principal place of business." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 503 (9th Cir. 2023). Therefore, Teachers Council is not at home in this District, so there is no general jurisdiction such as would allow this Honorable Court to hear any and all claims that may be brought against it here.

Doe and Roe must therefore rely on long-arm jurisdiction over the out-of-state Defendant. Teachers Council possessed a constitutional due process interest in not being subjected to process in a forum where it has established no meaningful contacts, ties, or relations. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985). "Due Process precludes a court from asserting jurisdiction over a defendant unless the defendant has certain minimum contacts with the forum state." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). "A defendant's conduct and connection with a forum State must be such that the defendant can reasonably anticipate being hauled into court there." *Id*.

Consequently, Plaintiffs must show that Teachers Council purposefully availed itself of the privilege of conducting business in the forum state and that its "purposefully directed" conduct establishes a "substantial connection" from which it would anticipate answering a lawsuit there. *Orban v. O'Connor*, 2000 U.S. App. LEXIS 854, at *2-3 (9th Cir., Jan. 20, 2000) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Doe and Roe have the burden to establish jurisdiction exists. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). Vague assertions and conclusions of law contained within the Complaint do not establish a prima facie basis for jurisdiction. *Holland American Line, Inc. v. Wartsila North America, Inc.*, 485 F.3d 450, 458 (9th Cir. 2007).

A court may exercise either general or specific long-arm jurisdiction over a nonresident corporation. *Sher*, 911 F.2d at 1361. General jurisdiction applies where a defendant's activities in the state are continuous and systematic and exposes the nonresident to any liability that might be brought. *Id*. Where general jurisdiction is lacking, a court may still exercise specific jurisdiction over a presented action if the defendant has sufficient contacts with the forum state in relation to that cause of action. *Id*.

Here, Plaintiffs plead nothing to show Teachers Council maintains continuous and systematic contacts with the State of Oregon. They describe only one alleged contact – the one that concerns them. They therefore abandon their burden to show a substantial, continuous, and systematic connection with this forum that would support general jurisdiction. See *Id*.;

Page 5 – **DEFENDANT TEACHERS COUNCIL, INC.'S FRCP 12(b) MOTIONS TO DISMISS**

*Volkswagen*, 444 U.S. at 297. "A party's conduct and acquiescence may waive an argument that party would otherwise be entitled to raise." *Love v. Villacana*, 73 F.4th 751, 755 (9th Cir. 2023).

This leaves Plaintiffs with only the possibility of establishing specific jurisdiction. The Ninth Circuit uses a three-part test to evaluate the nature and quality of a defendant's contacts for purposes of specific jurisdiction: 1) some action must be taken whereby the defendant purposefully avails itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of the forum's laws; 2) the claim must arise out of or result from the defendant's forum-related activities; and 3) exercise of jurisdiction must be reasonable. *Cubbage v. Merchant*, 744 F.2d 665, 668 (9th Cir. 1984).

First, Plaintiffs here have failed to establish that that Defendant Teachers Council "availed itself of the privilege" of doing business in Oregon so as to benefit from the protection of its laws. The Complaint states that Doe joined the school using an application package Defendant prepared. Therefore, Doe's association with the school emanated from Defendant's operational headquarters in Maryland, where it produced Doe's referral package and provided assistance to her in seeking her visa.

The payment for those services flowed into Maryland, not into Oregon. In *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1124-25 (9th Cir. 2002), the Ninth Circuit noted that the contracts were formed outside the district (as they were here, when Doe engaged Defendant's sponsorship services in Maryland from a different country), payment was made outside the District (here, it flowed into Maryland headquarters), and the contract implicated a company outside the District (*i.e.*, a Maryland one). The court further held that mere payments flowing between states are insufficient to justify *in personam* jurisdiction. *Id.* at 1124. An entity can do business "with a state" without doing business "in the state," because "engaging in commerce with residents of the forum state is not in and of itself the kind of activity that approximates physical presence[.]" *Id.* at 1124-25.

Plaintiffs' allegations do not show that Teachers Council conducts any operations here of a permanent or ongoing, non-transitory nature. They do not aver it maintains any tangible or

Page 6 – **DEFENDANT TEACHERS COUNCIL, INC.'S FRCP 12(b) MOTIONS TO DISMISS**

intangible assets that Oregon law protects. They do not aver it has dispatched agents or officers to rendezvous in Oregon.  Teachers Council does not reach Oregon customers through the stream of commerce or utilize Oregon infrastructure, since it does not market to an Oregon customer base, and Plaintiffs describe it as serving only individuals *from abroad* who seek it out specifically. Plaintiffs have not shown that Teachers Council purposefully availed itself of Oregon's economy or government such that it should expect to be hauled into court outside the center of its operations.

Secondly, the claim does not arise out of or relate to Teachers Council's ephemeral touch in Oregon. "We have long understood [that] for an injury to arise out of a defendant's forum contacts[, it] require[s] 'but for' causation, in which a direct nexus exists between a defendant's contacts with the forum state and the cause of action." *Yamashita v. LG Chem., Ltd*., 62 F.4th 496, 504 (9th Cir. 2023) (cleaned up).

Here the forum "contact" does not trace to the claims through but-for causation. The forum contact was allegedly "placing" Doe in the school International Leadership Academy. This mischaracterization by Plaintiffs aside, that placement did not cause her termination, which was an independent action taken by an independent school. Plaintiffs assert that following Doe's termination, Teachers Council discriminated against Plaintiffs by failing to continue sponsoring their visas. But that is the absence of action, not an affirmative act in Oregon. Teachers Council certainly did not reach into Oregon to choose not to renew sponsorship, since that decision would have been located in Maryland headquarters, and involved the absence of action in Oregon or in any other state. Inaction cannot be a reaching in, since the defendant must purposefully contact the state, and inaction can only be purposeful at the desk where the decision not to act occurs, *i.e.* in Maryland. A person cannot reach into a state by sitting in another state and doing nothing toward the forum state. So, the initial termination was not directly caused by facilitating employment in Oregon, and the subsequent withdrawal of sponsorship was not a reaching in, because it is Maryland-based inaction.

Alternatively, it has been held that a connection to the forum can be demonstrated if the injury "relates to" the forum contacts. *Yamashita*, 62 F.4th at 505. However, to trigger this in the Ninth Circuit, Plaintiffs must plead one of several theories of relatedness. The first is where it "seems similar injuries to others will tend to be caused by the defendant's contacts with the forum." *Id*. However, even assuming here that Teachers Council had any meaningful contact with Oregon, Plaintiffs have not asserted that it engaged in patterned conduct that would cause similar injuries to others. Second, a "plaintiff's injury relates to the defendant's forum contacts if the defendant should have foreseen the risk that its contacts might cause injuries like that of the plaintiff." *Id*. at 506. Again, the theorem fails: the contact was the facilitation of pedagogical employment, which did not make discrimination likely, since Teachers Council could not have known of the alleged disability at the time of placement when Doe did not make the disability known.  Nor could Defendant have been reasonably expected to anticipate the response of the independent school to the discovery of Doe's disability.  Since Plaintiffs did not tell anyone of Doe's disability, no disability discrimination (to the extent that any such discrimination even occurred) could have been foreseeable. These observations defeat the "relation" theory of specific jurisdiction. The "relates to" analysis must be a relatively narrow one, for "to give 'relate to' too broad a scope would risk collapsing the core distinction between general and specific personal jurisdiction." *Id*.

Plaintiffs fail to establish personal jurisdiction over Defendant in this forum under any recognized theory. Furthermore, in the absence of federal jurisdiction, this Court should dismiss the state law claim. *Action Embroidery Corp. v. Atlantic Embroidery, Inc*., 368 F.3d 1174, 1180 (9th Cir. 2004) (a court must have personal jurisdiction over a federal question before it can assert personal jurisdiction over a supplementary, state-law action based on the same facts).

Defendant therefore requests dismissal of the Complaint.

/ / /

/ / /

**II.    Plaintiffs fail to establish venue in this court.**

Venue does not lie in this Court. Therefore, Defendant moves to dismiss the Complaint under FRCP 12(b)(3).

Under the ADA, if a defendant is not to be found within the District where the alleged discrimination occurred or where the plaintiff would have worked but for that discrimination, the action is to be maintained in the district of a defendant's principal place of business. 42 U.S.C. § 2000e-5(f)(3).

A federal court may dismiss a complaint for improper venue. *Costlow v. Weeks*, 790 F.2d 1486, 1488 (9th Cir. 1986). The plaintiff bears the burden of establishing venue when challenged. *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). The Court is not required to accept the Complaint as true. *Richards v. Lloyd's of London*, 135 F.3d 1289, 1292 (9th Cir. 1998).

"A corporation is 'found' in a district for venue purposes if it is subject to personal jurisdiction in that district." *Harrison v. International Ass'n of Machinists & Aerospace Workers*, 807 F. Supp. 1513, 1516 (D. Or. 1992). As set forth above, Plaintiffs have failed to carry their burden to establish personal jurisdiction.

Here, Defendant Teachers Council does not "reside" in Oregon. Its principal place of business is Maryland, where it is headquartered and incorporated. For all the foregoing reasons, it has not availed itself of Oregon's resources or public to make itself susceptible to process here. The proper venue for this case is Maryland, the situs of Defendant where it is subject to general personal jurisdiction. Teachers Council therefore ask this Court to dismiss the Complaint. Even assuming arguendo that Oregon is the proper forum for the state law claims, where "there are multiple claims in an action, the plaintiff must establish that venue is proper as to each claim." *SoccerSpecific.com LLC v. World Class Coaching, Inc.*, 2008 U.S. Dist. LEXIS 110718, at *2-3 (D. Or., Oct. 17, 2008).

Defendant respectfully requests this Court to grant the Motion and dismiss the Complaint in this District.

### III.  Plaintiff Roe lacks standing

Under FRCP 12(b)(1) and/or (6), Plaintiff Roe's claims should be dismissed for lack of standing.

A plaintiff must establish causation to have standing. *Cammack v. Waihee*, 932 F.2d 765, 771 (9th Cir. 1991). Causation requires that the injury be fairly traceable to the challenged action. *Mendia v. Garcia*, 768 F.3d 1009, 1012 (9th Cir. 2014). Existence of standing is a question of law. *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1039 n. 3 (9th Cir. 2008).

On its very face, Plaintiffs' Complaint establishes that Defendant Teachers Council took no action whatsoever with regard to Roe. Indeed, the sum and substance of Defendant's allegedly wrongful conduct was the decision to discontinue sponsorship of Doe's visa. As the Complaint makes clear, his ability to remain and work in the U.S. required a J-2 visa derived from his wife's J-1 visa. No one disputes that the ending of Defendant's sponsorship for Doe would result in expiry of Doe's J-1 visa, and eventually, necessarily, the J-2 visa for Roe.

Therefore, Teachers Council's conduct at issue is actually and only the withdrawal of J-1 sponsorship, such that Roe's visa would terminate inevitably of its own terms. Regardless of whether Defendant took any action directly against Roe, he would have lost his employability status because of Doe's terminated sponsorship. Therefore, there was nothing done to him that does not trace back exclusively to what happened with Doe. No injury traces back to any act or omission toward him directly. The lost income and attendant emotional distress, etc., is traceable exclusively to the effect on Doe by operation of visa law.

Rather, the entirety of Roe's claim is based on the fact that his J-2 visa terminated by operation of law upon the termination of Doe's J-1. This incidental and derivative (albeit serious) impact, without more, is insufficient for Roe to establish that Teachers Council caused a legal injury for purposes of standing.

Plaintiff Roe therefore lacks standing and should be dismissed from the action.

/ / /

/ / /

**IV.     The action should be dismissed where Plaintiffs show no adverse employment action and Defendant is not an entity covered as an employment agency.**

There is no plausibly-stated case of adverse employment action against Doe here, and Defendant is not an entity covered by the ADA as Plaintiffs seek to invoke it. Since there can be no primary discrimination against the person allegedly "disabled," there can be no secondary discrimination against Roe based on an alleged association with a disabled person.

First, Plaintiffs do not plead that Defendant terminated her from employment. An independent educational institution did that. The Ninth Circuit has never adopted strict vicarious liability under the ADA where the alleged discriminator is not an employee or contractor of the party to be held liable and did not actively participate as an agent. Here, Plaintiffs do not plead the school, International Leadership Academy, is an employee or contractor of Teachers Council, nor could they. Defendant is therefore not vicariously liable for the termination of Doe by International Leadership Academy. Rather, Plaintiffs' theory is that Defendant discriminated against Doe by declining to continue sponsoring her J-1 visa after her employment was terminated by an independent school.

Employment-discrimination laws "primarily govern relations between employees and their employer, not between employees and third parties." *Morgan v. Safeway Stores, Inc.*, 884 F.2d 1211, 1214 (9th Cir. 1989). To establish a third party's liability for the discrimination of an employer, the third party must be "more than a broker, or other intermediary" but an affirmatively, actively participating agent. *Id*. Here, Plaintiffs do not allege Teachers Council was responsible for controlling International Leadership Academy's decision to terminate Doe. Their entire Complaint describes Defendant's role as facilitating her employment but nothing further than that, and certainly not controlling her employment.

Furthermore, Defendant's decision not to consider sponsoring Doe's visa is not an adverse employment action. Adverse employment actions are those that target employment in the literal sense. An adverse employment action is defined to include discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand. *Lovejoy-Wilson v. NOCO Motor*

*Fuel, Inc.*, 263 F.3d 208, 223 (2nd Cir. 2001); *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1297 (3rd Cir. 1997) (altering the employee's compensation, terms, conditions, or privileges of employment, depriving him or her of employment opportunities, or adversely affecting his or her status as an employee). These definitions show foreign-relations, visa-based actions simply were not contemplated as part of any employment-discrimination remedy.

In fact, in deciding whom to sponsor for J-1 visas, Teachers Council is acting with the collaboration of the United States Government, not as an employer or employment agency but essentially as a delegated agent of the Government. The Department of State considers the J-1 program an educational cultural exchange and not an employment opportunity. Congress created the J-1 program under the authority of the Mutual Education and Cultural Exchange Act of 1961, which "enable[s] the Government of the United States to increase mutual understanding between the people of the United States and the people of other countries by means of educational and cultural exchange." *Tatiana Cuenca-Vidarte v. Samuel*, 2022 U.S. Dist. LEXIS 179633, at *2 (D.D.C., Sep. 30, 2022). The J-1 program "has served as a valuable and important diplomatic tool of U.S. foreign policy."[1] It authorizes foreign nationals to temporarily reside and work in the United States for purposes of teaching, studying, or researching. 8 U.S.C. § 1101(a)(15)(J).

Teachers Council is a designated surrogate of this diplomatic mission, who examines applicants so they can participate with the U.S. Departments of State and Homeland Security.[2] "In carrying out the responsibilities of the Exchange Visitor Program, the Department of State designates public and private entities to act as exchange sponsors."[3] The program requires not

---

[1] BridgeUSA, *available* at *https://j1visa.state.gov*
[2] BridgeUSA, *available at* *https://j1visa.state.gov/participants/how-to-apply/sponsor-search*
[3] U.S. Citizenship and Immigration Services, "Exchange Visitors," *available at https://bit.ly/3d1Nq32* or *https://perma.cc/CPY6-QT4U*. See also, *Khan v. Blome*, 2022 U.S. Dist. LEXIS 214836, at *2 (D.D.C., Nov. 29, 2022).

Page 12 – **DEFENDANT TEACHERS COUNCIL, INC.'S FRCP 12(b) MOTIONS TO DISMISS**

only private sponsorship but governmental functions such as an interview at a U.S. embassy or consulate and submission of biometric data.[4]

Plaintiffs' Complaint supports this, showing the role Defendant had in "screening" applicants like Doe for alignment with the Government's terms of admission. The withdrawal of continued sponsorship was not an employment-related action but a diplomatic action.

Foreign nationals do not have any enforceable right to a visa for continued residency and work in the United States. "Decisions regarding the admission and exclusion of foreign nationals are a fundamental sovereign attribute exercised by the Government's political departments. The power to exclude or expel aliens, as a matter affecting international relations and national security, is vested in the Executive and Legislative branches of government," not the judiciary. *Khachatryan v. Blinken*, 4 F.4th 841, 849 (9th Cir. 2021) (cleaned up). A foreign national seeking admission into the United States "has no ability to bring a cause of action challenging [his or her] denial of admission." *Id*. And Teachers Council collaborates as a delegate in this sovereign function.  It is Defendant's action in this capacity that Plaintiffs complain of as they attempt to state a cause of action for being denied continued lawful alien residency and work permission in the United States. Effectively, the U.S. Departments of State and Homeland Security are delegating part of their sovereign function to this entity as an instrument of their diplomatic objectives. These facts simply are not susceptible of an action under the ADA.

Additionally, to be actionable, discrimination must occur by a covered entity. Plaintiffs aver that Defendant is an "employment agency" as provided in the scope of ADA's applicability. As set forth above, employment agencies are defined as parties "regularly undertaking . . . to procure employees for an employer or to procure for employees opportunities to work for an employer." *Ass'n of Mexican-American Educators v. California*, 231 F.3d 572, 575 (9th Cir. 2000).

---

[4] BridgeUSA, *available at* https://j1visa.state.gov/participants/how-to-apply/interviews-documents

Page 13 – **DEFENDANT TEACHERS COUNCIL, INC.'S FRCP 12(b) MOTIONS TO DISMISS**

The first disjunct does not apply, as Plaintiffs do not plead Teachers Council is affiliated with any employer so as to channel employees toward that specific employer. Rather, it facilitates visa entry into the United States for teaching opportunities. Plaintiffs' Complaint intones this, describing how Teachers Council prepared an application package for Doe to apply with to prospective employers. The mission of the J-1 program, with Defendant a facilitator, is not to secure staffing for designated employers but as a diplomatic exchange. They do not plead otherwise.

Neither does the second disjunct apply in this case. As disclosed in the Complaint, it was Plaintiff Doe who sought to locate her own employment opportunities once she was sponsored and gained American entry. She selected a second employer after she was first discharged (independently of Teachers Council). She required continued sponsorship to begin work there, but did not rely on Teachers Council to locate that work. Doe and Roe say she was "assigned" to a host school, but obviously she had the freedom to select a host school or she could never have chosen a second one on her own impromptu, without the intermediacy of Teachers Council, as she ultimately did. Rather, based again on the Complaint, Doe required Defendant's approval of the new host school – as part of the terms of the J-1 diplomatic mission – not its engagement to assist her in locating a host school. The Complaint additionally supports this, where it shows Defendant recommended to Doe she could pursue teaching opportunities apart from teaching French, if Doe choose to seek out these other opportunities of her own free will. The Complaint continually refers to Teachers Council "placing" her with a host school, but in point of fact, she "placed" herself, with Defendant's involvement being constrained to her continued participation as a member of the J-1 program, not with her being assigned to work a specific job. Teachers Council is positively not an "employment agency."

For these reasons, Plaintiffs fail to state a claim against Teachers Council under the ADA, so Defendant requests dismissal of Plaintiffs' claims under FRCP 12(b)(6).

/ / /

V. **The State-law claim should be dismissed for lack of a supportive federal claim.**

With the federal claims excluded, pendent jurisdiction should be denied over the state law claims. State law claims are appropriate for federal court where the plaintiffs can also seek relief in a substantial claim based on federal law. *United Mine Workers v. Gibbs*, 383 U.S. 715, 722 (1966), superseded by statute in irrelevant part. Here, there remain no valid claims under federal law. This means the Court should decline to exercise supplementary jurisdiction. State law claims cannot persist where there is no predicate violation of federal law actionable in the same Complaint. *Best Carpet Values*, 2024 U.S. App. LEXIS 759.

Defendant therefore requests dismissal of the pendent Oregon claim.

## CONCLUSION

Based on the forgoing, we respectfully request this Honorable Court to grant Defendant's Motion Under FRCP 12(b) and dismiss Plaintiffs' Complaint with prejudice.

DATED this 2nd day of February, 2024.

HARRANG LONG P.C.

BY   s/ Graham M. Sweitzer
Graham M. Sweitzer, OSB #025866
111 SW Columbia Street, Suite 950
Portland, OR  97204
503-242-0000

Of Attorneys for Defendant

CORNERSTONE LAW FIRM, LLC

By:  /s/ Joel A. Ready
Joel A. Ready, *pro hac vice*
PA Attorney I.D. # 321966
8500 Allentown Pike, Suite 3
Blandon, PA 19510
610-926-7875

Of Attorneys for Defendant