IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JANE DOE and JOHN ROE,<br><br>   Plaintiffs,<br> v.<br><br>TEACHERS COUNCIL, INC.,<br><br>   Defendant. | Case No.: 3:23-cv-01747-AN<br><br><br>OPINION AND ORDER |

   On February 16, 2024, acting *pro se*, nonparty Eugene Volokh ("Volokh") filed a Motion to Intervene and Unseal, ECF [20], seeking to intervene in this case for the sole purpose of unsealing plaintiffs' Motion to Proceed Pseudonymously, ECF [4]. Plaintiffs oppose the motion, asking this Court to either deny the motion, or unseal only a redacted version of the motion. Defendant has no objection. For the following reasons, Volokh's Motion to Intervene is GRANTED, and his Motion to Unseal is GRANTED in part and DENIED in part.

## LEGAL STANDARD

### A. Motion to Intervene

   Federal Rule of Civil Procedure 24(b) authorizes motions for permissive intervention, stating, "On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The Ninth Circuit has held that Rule 24(b) is the appropriate vehicle for nonparties seeking access to judicial records in civil cases. *See San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1100 (9th Cir. 1999). Generally, nonparties seeking permissive intervention under Rule 24(b) must show: "(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992). However, where a nonparty seeks permissive intervention solely to unseal a court record,

they need only satisfy the timeliness requirement. *San Jose Mercury News*, 187 F.3d at 1100; *Cosgrove v. Nat'l Fire & Marine Ins. Co.*, 770 Fed. App' 793, 795 (9th Cir. 2019).

**B.    Motion to Unseal**

    1.    *Federal Common Law Right of Access*

The public has a "general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n.7 (1978). Thus, parties seeking to seal a judicial record usually must overcome a "strong presumption in favor of access" by demonstrating that "compelling reasons" outweigh the general right to access. *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006). However, non-dispositive motions are, at times, treated differently than dispositive motions. *Id.* at 1180. This is because non-dispositive motions "are often 'unrelated, or only tangentially related, to the underlying cause of action.'" *Id.* at 1179. Thus, when a non-dispositive motion is not "more than tangentially related to the merits of a case," the presumption in favor of public access does not apply, and the party opposing unsealing need only meet the "good cause" standard. *Ctr. For Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1101 (9th Cir. 2016). The "good cause" standard requires a "particularized showing" that "specific prejudice or harm will result" if the information is disclosed. *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002). If that showing is made, the burden then shifts to the party seeking disclosure to present "sufficiently compelling reasons why the . . . document should be released." *Id.* at 1213.

    2.    *First Amendment Right of Access*

The First Amendment also provides a "right of access to court proceedings and documents." *Oregonian Publ'g Co. v. U.S. Dist. Ct.*, 920 F.2d 1462, 1465 (9th Cir. 1990). "The right of access is . . . an essential part of the First Amendment's purpose to 'ensure that the individual citizen can effectively participate in and contribute to our republican system of self-government.'" *Courthouse News Serv. v. Planet* (*Planet I*), 750 F.3d 776, 779 (9th Cir. 2014) (quoting *Globe Newspaper Co. v. Superior Ct.*, 457 U.S. 596, 604 (1982)). Whether the First Amendment right of access applies to specific judicial records depends on "(1) whether the proceeding or record 'ha[s] historically been open to the press and general

public' and (2) 'whether public access plays a significant positive role in the functioning of the particular [governmental] process in question.'" *Courthouse News Serv. v. Planet* (*Planet III*), 947 F.3d 581, 590 (9th Cir. 2020). This "experience and logic" test evaluates "the institutional value of public access to judicial proceedings and records to determine whether the First Amendment provides a presumption of access." *Id.*

If both prongs of the "experience and logic" test are met, the First Amendment presumptive right of access applies, and the plaintiff must demonstrate "an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *United States v. Sleugh*, 896 F.3d 1007, 1013 (9th Cir. 2018) (internal quotation marks omitted). Such an interest exists only if "there is a substantial probability that the [interest] will be prejudiced by publicity that closure would prevent" and "reasonable alternatives to closure cannot adequately protect the [interest]." *Press-Enterprise Co. v. Superior Ct. of Cal.*, 478 U.S. 1, 14 (1986).

## DISCUSSION

Volokh is a professor at UCLA School of Law, specializing in First Amendment law and access to the courts. Mot. to Intervene, ECF [20], at 2. He runs a blog, "The Volokh Conspiracy," where he has written about cases involving pseudonymity, and has been published in the online magazine, "Reason." *Id.* It is not entirely clear if Volokh seeks to unseal plaintiffs' Motion to Proceed Pseudonymously, ECF [6], or if he seeks to unseal plaintiffs' Motion to File Under Seal, ECF [4], because his motion states that he seeks to "unseal the motion to proceed pseudonymously," but references docket number [4]. *Id.* at 1. However, based on his statement that he seeks access to "better understand why pseudonymity was allowed in this case . . . and to be able to relay these reasons to readers," the Court presumes that he is seeking access to the Motion to Proceed Pseudonymously. *Id.* at 2.

Although plaintiffs offered to file a redacted version of the motion on the docket that would omit only information related to plaintiff Doe's mental health history and plaintiffs' identities, Volokh moves to unseal the entire document. Pls.' Resp. to Mot. to Intervene ("Pls.' Resp."), ECF [21], at 1. However, Volokh does not seek access to information related to plaintiffs' identities. Mot. to Intervene 2, 5-6.

A.     **Motion to Intervene**

Volokh filed this motion to intervene approximately ten and a half weeks after plaintiffs first filed their motion under seal, and approximately six and a half weeks after this Court granted plaintiffs' motion.[1] This delay is not untimely. *See San Jose Mercury News*, 187 F.3d at 1101 ("[D]elays measured in years have been tolerated where an intervenor is pressing the public's right of access to judicial records."). Accordingly, Volokh's motion to intervene is granted.

B.     **Motion to Unseal**

Volokh's motion to unseal is based on both the federal common law right of access and the First Amendment right of access. Because the First Amendment right of access, if applicable, imposes a more stringent standard than the federal common law right of access, the Court begins with this argument.

1.     *First Amendment Right of Access*

Volokh argues that the First Amendment right of access requires that the entire motion be unsealed without redaction. He contends that "'[m]otions to unseal judicial proceedings and orders ruling on those motions have historically been open to the public,'" and that motions to proceed pseudonymously should be treated similarly because they "prevent the public from accessing information." Mot. to Intervene 8 (quoting *United States v. Index Newspapers LLC*, 766 F.3d 1072, 1096 (9th Cir. 2014)).

A motion to proceed pseudonymously implicates the First Amendment right of access because a party's identity has traditionally been open to the public and the "public access plays a significant positive role in the functioning" of a motion to proceed pseudonymously. *Planet III*, 947 F.3d at 590; *see Doe v. Fellows*, No. 89-15869, 1991 WL 27453, at *2 (9th Cir. Mar. 5, 1991) (unpublished) (noting that Federal Rule of Civil Procedure 10(a), requiring complaint to name all parties, is based on the "public's legitimate interest in open court proceedings"). Indeed, motions to proceed pseudonymously generally require a balancing of the public's right of access against a party's purported need for pseudonymity. *See Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000).

---

[1] Though Volokh's motion is dated February 2, 2024, it was not entered on the docket until February 16, 2024.

Plaintiffs argue that redacting, or sealing, the specific information about plaintiff Doe's medical challenges is warranted for three reasons. First, plaintiffs argue that medical history is often protected by courts. Pl.'s Resp. 3 (citing *Gary v. Unum Life Ins. Co. of Am.*, No. 3:17-cv-01414-HZ, 2018 WL 1811470, at *6 (D. Or. Apr. 17, 2018)). They also highlight the District of Oregon's website, which advises filers to "exercise caution when filing documents that contain . . . medical records, treatment and diagnosis." *Personal Data Identifiers Notice*, U.S. D<small>IST</small>. C<small>T</small>. <small>FOR</small> D<small>IST</small>. <small>OF</small> O<small>R</small>., https://ord.uscourts.gov/index.php/rules-orders-and-notices/notices/personal-data-identifiers-notice (last updated Aug. 21, 2019).

Second, plaintiffs argue that they moved to proceed pseudonymously precisely because of the highly sensitive nature of the underlying facts, and to protect themselves from "additional social and economic harm that may occur if future employment agencies or employers learn of this suit and its facts." Pls.' Resp. 3. Plaintiffs note that the entire basis of their case is that they suffered harm from the "severe consequences of the stigmatization of this particular mental health change." *Id.* This alleged preexisting harm, in plaintiffs' views, places them and their family in a "much more precarious and uncertain [position] than most victims of employment discrimination." *Id.*

Third, plaintiffs argue that unsealing the motion will "have a chilling effect" because they would need to "weigh the ongoing potential stigmatization of this mental health challenge with pursuing their rights to be free from discrimination in their employment." *Id.* at 4. Plaintiffs emphasize that Oregon, and particularly the Portland metro area, has "very, very few" primary and pre-school French schools, increasing the likelihood that a member of the French school community could "piece together Plaintiffs' identities and learn of Plaintiff Doe's mental health history." *Id.*

The Court finds that plaintiffs have articulated an overriding interest that keeping specific information about Doe's mental health history under seal is essential to protect. Though Volokh argues that plaintiffs' reasons are based on "a hypothetical fear," plaintiffs allege that they have already suffered harm due to disclosure of Doe's mental health history. Amended Reply, ECF [25], at 4. Volokh points to a case from the Eastern District of Pennsylvania, where the court denied the plaintiff's motion to proceed

pseudonymously, *Doe v. Temple University*, No. 2:23-cv-04433-JDW, 2024 WL 776616, at *2 (E.D. Pa. Feb. 26, 2024). The plaintiff sought anonymity, in part, because he feared that 'his current employer would fire him if it learn[ed] about his [health diagnosis] and subsequent employers would refuse to hire him." *Id.* However, the court found this fear unreasonable because it asked the court to assume "that employers will break the law." *Id.*

The plaintiff in *Doe* was a statistics professor at Temple University—a position with a high degree of transferability to other employment opportunities. Here, plaintiffs are foreign citizens working at French immersion schools in Portland, Oregon. Plaintiffs have emphasized that the number of French immersion schools in this area is incredibly small, making their employment opportunities far more limited and increasing the likelihood that their already distinguishable identities could be easily surmised from Doe's medical circumstances. The unique circumstances of this case create a substantial probability that Doe's mental health history will be connected to her and her family and that Doe would face continued difficulty in securing a job because of that connection. Indeed, plaintiffs' entire case is premised on allegations that they have already experienced harm because an employer allegedly questioned Doe's ability to perform her job in light of her mental health history. The Court does not find it unreasonable that plaintiffs believe such harm could occur again.

Further, the magnitude of harm implicated by disclosure of Doe's medical history substantiates the validity of plaintiffs' fears and renders closure essential to protecting plaintiffs' interests. Both plaintiffs are foreign citizens lawfully in the United States on work visas, meaning their ability to remain in this country is inherently tied to their employment. Pls.' Resp. 3. The severe consequences that plaintiffs face from future employers declining to hire Doe based on her medical history is a compelling and distinguishing factor in this case.

However, Volokh argues that any risk posed by unsealing the motion is diminished because plaintiffs will remain anonymous. Amended Reply 6. He references cases where courts left information about mental health conditions unsealed in pseudonymous litigation, such as *Doe v. University of Maryland Medical System Corp.*, No. CV SAG-23-1572, 2023 WL 3949737, at *3 (D. Md. June 12, 2023), *Doe v.*

6

*Provident Life & Accident Insurance Co.*, 176 F.R.D. 464, 4655 (E.D. Pa. 1997), and *Beitzel v. Becerra*, No. 2:23-CV-01932 WBS DB, 2024 WL 150215, at *2 (E.D. Cal. Jan. 12, 2024).

None of these cases involve plaintiffs who work in an incredibly small community located in a narrow geographic region, nor do they involve plaintiffs whose nationality statuses already distinguish them amongst their peers. Indeed, *Doe v. University of Maryland* is the only case that address both a motion to seal and pseudonymity, and, in that case, the plaintiff sought to have the entire judicial record sealed. 2023 WL 3949737, at *2. The court declined to seal the record, electing instead to permit the plaintiff to proceed under a pseudonym. *Id.* at *2-3. Even so, the court expressly allowed the parties to "continue to move to seal specific documents that . . . are inappropriate for public disclosure even with the redaction of Plaintiff's name or other identifying information." *Id.* at *4; *see Jane Roes 1-2 v. SFBSC Mgmt., LLC*, 77 F. Supp. 3d 990, 997 (N.D. Cal. 2015) (permitting plaintiffs proceeding pseudonymously to make "requests to seal particular filings, or parts of filings").

Nor does keeping Doe's mental health history under seal "insulate plaintiffs from all possible risk that someone might identify them." Amended Reply 4-5. As already stated, there are other distinguishing details about plaintiffs on the public record. However, maintaining the confidentiality of specific details about Doe's mental health history omits personal information that would make it substantially probable that Doe's identity will become known.

Finally, Volokh argues that any harm could be mitigated by redacting plaintiffs' names and other personal identifying information (except the mental health information). Mot. 5. On this, the Court agrees, to an extent. The Court's findings are limited to the specific information regarding Doe's mental health history. Plaintiffs have not demonstrated an overbearing interest in keeping the entirety of their motion under seal, nor do plaintiffs seem to dispute that redaction is an adequate method of protecting Doe's medical information, as they have already prepared a redacted version of the motion. Unsealing the motion with redactions will, as one court put it, ensure that "[t]he great bulk of this case will be on the public record. The basic facts of the plaintiffs' employment and the defendants' challenged conduct, the court's reasoning, and the resulting interplay of those things . . . will be open to the public." *SFBSC Mgmt.*, 77 F. Supp. 3d at

7

996. Because a reasonable alternative to closure can adequately protect plaintiffs' interests, entry of a redacted copy of plaintiffs' Motion to Proceed Pseudonymously on the public record is appropriate.

    2.    *Common Law Right of Access*

Volokh argues that the motion is more than tangentially related to the underlying cause of action, and is, thus, dispositive, because "[t]he ability to proceed pseudonymously may affect a litigants' willingness to proceed with litigation." Mot. to Intervene 4. However, plaintiffs' willingness to proceed with litigation in this context is not related to the merits of this action because it does not relate to the strength or weakness of their claims. Nor was the Court's decision to grant the motion "strongly correlative to the merits of [the] case." *Ctr. For Auto Safety*, 809 F.3d at 1099. Thus, the motion is non-dispositive, and the good cause standard applies.

The good cause standard discussed in Ninth Circuit common law right of access cases generally are based on Rule 26(c). However, plaintiffs' motion was filed under seal pursuant to Federal Rule of Civil Procedure 5.2(e). Nonetheless, courts have applied Rule 26(c)'s good cause standard when addressing motions to seal brought under Rule 5.2(e). *See, e.g.*, *New England Life Ins. Co. v. Wilson*, No. 2:11-cv-045, 2011 WL 13214116, at *3 n.5 (D. Vt. Sept. 28, 2011); *FTC v. Lights of Am. Inc.*, SACV 10-1333, 2011 WL 1515158, at *4 n.5 (C.D. Cal. Mar. 31, 2011). Thus, Rule 26(c)'s good cause standard applies with equal force to plaintiffs' motion.

For the same reasons already discussed, the Court finds that plaintiffs have identified examples of specific prejudice and substantial harm that would occur if Doe's mental health history is unsealed. Plaintiffs' private interests outweigh the public's interest in disclosure.

## CONCLUSION

Accordingly, Volokh's Motion to Intervene and Unseal, ECF [20], is GRANTED in part and DENIED in part. Plaintiffs are ordered to publicly file a redacted copy of their Motion to Proceed Pseudonymously by March 29, 2024.

IT IS SO ORDERED.

DATED this 21st day of March, 2024.

_____
Adrienne Nelson
United States District Judge

Case 3:23-cv-01747-AN   Document 28   Filed 03/21/24   Page 9 of 9