IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JANE DOE and JOHN ROE<br><br>       Plaintiffs,<br> V.<br><br>TEACHERS COUNCIL, INC.,<br><br>       Defendant. | No. 3:23-CV-01747-AN<br><br>JURY TRIAL OF 12 DEMANDED |

**<u>DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR PROTECTIVE ORDER</u>**

Defendant files this Brief in Opposition to Plaintiffs' Motion for a Protective Order at ECF No. 54.

**<u>FACTS.</u>**

As taken from the Third Amended Complaint:

Jane Doe is a citizen of the French Republic who participated in Defendant's J-1 Teacher Exchange Program and was placed with a host school in Multnomah County for the 2021-2022 and 2022-2023 school years, for the purpose of teaching the French language to school age children. [ECF No. ¶¶ 1-40]. This changed "around February 4, 2023, when her employment there was terminated after a dispute involving pay." [Id. ¶ 42]. "Defendant and the host school have a longstanding relationship, the host school has been one of Defendant's resources for teacher placement since around the time the host school was founded." [Id. ¶ 45].

Thus, after being terminated *for cause* by the host school and having deeply alienated a longstanding relationship with one of Defendant's important clients, Doe now sues the Defendant on a theory under the Americans with Disabilities Act (ADA) that Defendant discriminated against her on the basis of "perceived disability, or record of disability . . ." [ECF No. 47 ¶ 156]. Jane Doe

1

specifically alleges that Defendant had an affirmative duty to help her find a new placement within our J-1 Visa Program and "failed to provide Doe with a reasonable accommodation." [Id. ¶¶ 74-154].

Doe then obtained employment with the International Leadership Academy. Doe has refused to sign any written authorization of release of records form her subsequent employer. As further discussed in the Argument Section, Defendant is willing to stipulate with the Plaintiffs on the means of obtaining records from this person in a manner that may preserve the Plaintiffs' anonymity in the instant litigation.

## STANDARD OF REVIEW

"The Federal Rules of Civil Procedure promote a 'broad and liberal' policy of discovery." Updike v. Clackamas Cnty., 2016 U.S. Dist. LEXIS 205102, at *3 (D. Or. June 21, 2016) (citing Hickman v. Taylor, 329 U.S. 495 (1947)). The party opposing discovery has the burden of showing that discovery should not be allowed. Id. A protective order must issue only for "good cause." Id. at *3-4. "Good cause exists if the party seeking protection carries its burden of showing 'specific prejudice or harm will result if no protective order is granted.'" Id. at *4. "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy" the test. Beckman Indus., Inc. v. International Ins. Co., 966 F.2d 470, 476 (9th Cir. 1992).

## ARGUMENT

Plaintiffs' Motion is the equivalent of a gag order, in violation of the First Amendment of the U.S. Constitution. If Plaintiffs want to quash subpoenas to third parties as irrelevant or burdensome, they'd fail for lack of standing. See, e.g., Harbord v. Home Depot, 2017 U.S. Dist. LEXIS 43782, at *4 (D. Or. Mar. 24, 2017). They here attempt a bypass by styling the Motion as for a protective order. There's no privilege as a matter of law in the information sought and, if there are any legitimate privacy concerns here, the Plaintiffs have the means of accommodating

their anonymity with our right to obtain information from third parties.

I.      **Plaintiffs' Fail the Standard for a Protective Order and Have the Ability to Accommodate Defendant's Right to Obtain Information from Third Parties.**

There are reasonable limitations that Plaintiffs could have been agreed upon but refuse to do so, and the Motion conflates two significantly different things. Although stated as protecting the disclosure of the Plaintiffs' identities, we are seeking information from Jane Doe's subsequent employers, and therefore *they already know her identity*. Thus, unless Doe wishes to tell the Court that she assumed a fake identity and obtained employment as a result, there is no harm in and of itself that her subsequent employers know her name, being in possession of that information already. Plaintiffs cite DOES I thru XXIII v. Advanced Textile Corp., 214 F.3d 1058 (9th Cir. 2000), but the anonymous parties in that case presented credible evidence that "if their identities are disclosed to defendants and other nonparties to this action, they will be fired from their jobs, deported from Saipan, and arrested and imprisoned by the People's Republic of China." Id. at 1062. The instant case does not come close to the magnitude of the harm alleged there.

The defendants in that case did not know the identities of the plaintiffs, whereas in the instant case we already do. Thus, it's not her identity that Jane Doe wishes to keep anonymous, *but the mere fact that she has sued the Teachers Council, Inc. in this Court*. Plaintiffs have not offered to sign a written authorization of release to their current employers. If Jane Doe didn't want the fact of the instant litigation disclosed to her current employer, then she could have stipulated, subject to this Court's approval, for the Defendant to propound a subpoena under a new docket number that doesn't reference or identify the Plaintiffs, thereby removing the fact that Plaintiffs sued the Defendant in this case. The new docket could have a generic caption, "*In re* J-1 Visa Program of Teachers Council, Inc.," which would not suggest that Jane Doe had sued or done anything wrong here.

In any event, Plaintiffs had it within their power to accommodate our need for discovery against their purported privacy interests but refuse to do so. They appear to have something to hide. Where, as here, Plaintiffs have the means of accommodating our request alongside their desire for anonymity in the instant litigation, "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy" the test. Beckman Indus., Inc. v. International Ins. Co., 966 F.2d 470, 476 (9th Cir. 1992). Indeed, "specific prejudice or harm" cannot mean "stereotypical and conclusory statements." Silcox v. AN/PF Acquisitions Corp., 2018 U.S. Dist. LEXIS 53536, at *7-8 (W.D. Wash. Mar. 29, 2018). Unlike the Advanced Textile Corp., cited above, surely Plaintiffs would agree the French Republic has a stronger track record of respecting human rights than China. They have not presented this Court with any particularized fear of having to return to France or that their current employers would retaliate simply by providing employment records in response to a subpoena.

There are legitimate discovery purposes why Defendant seeks to obtain, by subpoenas, Plaintiffs' subsequent and current employment records. "Plaintiff's privacy interest in her employment records must be weighed against the defendants' need for the challenged information, particularly in light of the fact that this is an employment case." Estrada v. Avalon Health Care, 2022 U.S. Dist. LEXIS 150008, at *4 (D. Or. Aug. 19, 2022). "The courts of the Ninth Circuit generally allow discovery of employment records notwithstanding such privacy and public policy concerns where the material sought is clearly relevant to claims or defenses at issue and the information contained in the material is not otherwise readily available." Beaver v. Delicate Palate Bistro, Inc., 2017 U.S. Dist. LEXIS 147114, at *5 (D. Or. Sept. 12, 2017). "Relevancy is broadly construed, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant" to defense. McGuffin v. Dannels, 2023 U.S. Dist. LEXIS

4

239312, at *7 (D. Or. Sept. 8, 2023).

Plaintiffs erroneously tell the Court we are seeking evidence for matters not in issue in this case. As detailed in the Facts Section, Jane Doe's allegations in the Third Amended Complaint specifically allege in detail that she lost her employment with a host school after disputing her compensation and, afterwards, Defendant allegedly failed to help her find a new placement before terminating her from our J-1 Visa Program. Assuming for the sake of argument that we had a duty to help Doe look for a new placement, Defendant was 100% entitled to re-assess Doe's character and propensity arising from how and why she lost her employment with the host school (that had a good, long-term relationship with the Defendant) and to determine if she was not a good fit in our Program. In our Answer, we set forth our understanding of what happened here:

> Contra Doe's ungrounded and adventurous storytelling, Defendant did not withdraw visa sponsorship over mental health or any perception about her health. Defendant never thought she could not do her job. Rather, she was not a "fit" for the J-1 diplomatic mission because of her combative, unprofessional, and evasive behavior in her first school and afterwards. She tore apart a school community at the school where she first taught. She had been fired for insubordination and other insufferable behavior. She proved incapable of professional behavior and responsible communication. Eventually, it was time for her to return to France when her participation in the J-1 program no longer had a positive impact on the community, according to the objectives of the governmental program.

[ECF No. 44 at 2].

As a matter of law, for both hiring and firing decisions, employers and employment agencies are permitted to consider an applicant or employee's propensity and character. As stated by the American Law Institute, "Employers have an important interest in receiving information from other employers on prospective employees' performance ***and character***. Employment agencies that refer or assign employees to employers have a similar interest." RESTATEMENT (FIRST) OF EMPLOYMENT LAW § 6.02, cmt. a (emphasis added). The law does not seek to "discourage the exchange of accurate information between employers about the abilities and

5

character of employees." Id. § 6.03, cmt. c. This information is admissible as habit evidence. Fed. R. Evid. 406.

Consequently, Defendant was permitted to make its decision to terminate Jane Doe's participation in our J-1 Program based on her attitude of entitlement and character and propensity for unprofessional conduct, combativeness, and evasiveness. In proving that Jane Doe has these traits, we're not limited to the past. We can consider subsequent employment where the same traits manifest. Records from her subsequent and current employments are relevant for that purpose, in addition to possible mitigation of damages. If Jane Doe had truthfully admitted that she has these traits and had lost her employment as a result, no lawsuit would have been filed here. Consequently, this information is needed from third parties because Jane Doe will not admit the same and is not reasonably expected to do so. Moreover, it's not reasonable to assume that Jane Doe has access or possession of her current personnel file — it's not something employers typically hand out to their employees.

We ask the Court to consider an unreported case why third-party subpoena practice is a significant gamechanger in employment litigation. In Joyce Moll v. Berks Counseling Ctr., Inc., C.A. No. 5:19-CV-00918 (E.D. Pa.), the plaintiff sued her former employer on an allegation that it retaliated against her for obtaining intermittent leave under the Family Medical Leave Act. The employer, on the other hand, alleged that the plaintiff was terminated for-cause for excessive cell phone use during work hours in violation of written policy and despite being given progressive discipline. The defendant propounded a subpoena on T-Mobile USA, Inc. for the plaintiff's cell phone records during the times of her employment. After limiting the data to work hours and after excluding unanswered calls from the data, the defendant filed for summary judgment and showed the court that the plaintiff averaged 1.5 "active" phone calls per workday [Exhibit A, Joyce Moll,

supra, ECF No. 15-1, at 9-8]. The plaintiff was accepting and initiating phone calls with personal numbers that were not her immediate family, as well as calls with her daughters and her creditors, all of which had no correlation with her intermittent FMLA leave. [Id. at 12-14].

The plaintiff specifically alleged in her complaint, "Plaintiff did not take personal calls while at work, but rather, only took calls that were related to her parents' serious health conditions and her intermittent FMLA leave." [Exhibit B, Joyce Moll, supra, ECF No. 1 ¶ 17]. With the T-Mobile cell phone records obtained by third party subpoena, however, it turned out that she lied to her own counsel in addition to the court. The plaintiff therefore stipulated to dismiss the case with prejudice. [Exhibit C, Joyce Moll, supra, ECF No. 19].

Here, it wasn't reasonable to begin with to assume that Jane Doe has copies of her employer's personnel file that we're seeking, and no representations are made by her counsel that she in fact does. But in employment litigation, plaintiffs and defendants can sometimes lie to their own counsel in addition to withholding the production of or destroying unfavorable evidence. Obtaining information from third-party sources is indispensable in any employment-related case. Here, that the Court granted these Plaintiffs anonymity status was not intended to restrict our "right to every man's evidence" in discovery. Trump v. Vance, 591 U.S. 786, 799 (2020). Plaintiffs tell the Court that we can seek the same information "through documents or written discovery from Plaintiff." [ECF No. 54 at 5]. But that involves having to accept Plaintiffs' *veracity*, which as a matter of law we are not obligated to accept. It's well-settled that "discovery may help illuminate the veracity and strength of Plaintiff's contentions," Castellon v. Wal Mart Assocs., Inc., 2024 U.S. Dist. LEXIS 109361, at *5 (C.D. Cal. Apr. 17, 2024). Because "the jury, as finder of fact and weigher of credibility, is entitled to assess all evidence which might bear on the accuracy and truth of a witness's testimony," Lewy v. S. Pac. Transp. Co., 799 F.2d 1281, 1298 (9th Cir. 1986),

discovery on the Plaintiffs' veracity is permissible. The best analogy we can give the Court is that there's a world of difference between the lion in the zoo versus the lion in the wild. Discovery from a party is the lion in the zoo (behaving in an artificial manner). Discovery from nonparties is the lion in the wild (behaving in a natural manner). In discovery, we are permitted to put the Plaintiffs' veracity to the test by obtaining information from other sources.

Plaintiffs have not met the standard for a protective order, and have it within their means if they want reasonable limitations to protect the fact of this litigation from being disclosed to subsequent or current employers, where their identities are otherwise known. To grant what Plaintiffs ask for will work irrevocable prejudice on the Defendant's ability to obtain relevant and truthful information from third parties to substantiate our central fact defense on the merits that Jane Doe's participation in our J-1 Visa Program was terminated due to her attitude of entitlement and character for unprofessional conduct, combativeness, and evasiveness and that our diplomatic mission within our Program would be furthered if Doe were to return to France.

## II.     Plaintiffs Request an Unconstitutional Gag Order.

Plaintiffs' Motion exceeds any discovery requests from current employers but broadly includes communication with "potential employers" and "potential visa sponsors." [ECF No. 54 at 7]. This is an unconstitutional gag order in violation of the First Amendment of the U.S. Constitution. Entry of the proposed protective order functions as a prior restraint on speech. See, e.g., Levine v. U.S. District Court, 764 F.2d 590, 595 (9th Cir. 1985). "Prior restraints are subject to strict scrutiny because of the peculiar dangers presented by such restraints." Id.

Here, as mentioned, employers and employment agencies are conditionally privileged to publish truthful statements about an employee to "prospective employers and employment agencies." RESTATEMENT (FIRST) OF EMPLOYMENT LAW § 6.02(a). The Plaintiffs' request offends the First Amendment by not limiting itself to information gained in discovery from the Plaintiffs

exclusively and not independently sourced. It might be another thing to prevent Defendant from sharing information privately obtained from Plaintiffs. But the Court does not face that situation. Teachers Council independently knows what happened and learned of it shortly after the event. Rather, Plaintiffs seek to gag Teachers Council from sharing information (A) it already knows, (B) it *learned* through *other sources*, and (C) information in the public domain, just because those facts are a subject of civil litigation.

The Plaintiffs' Motion fails to meet strict scrutiny, is categorically prohibited by Smith, and is entirely an unconstitutional prior restraint. Defendant asks the Court to deny the Motion. If the Court doesn't want Defendant disclosing the fact of this litigation to prospective employers, for the time being, there's no need for an order to the effect. Even if such an order were needed, Plaintiffs fail to narrowly tailor their request as required by strict scrutiny.

## CONCLUSION

Based on the foregoing, Defendant respectfully requests this Court deny Plaintiffs' Motion for Protective Order.

Respectfully submitted,

**CORNERSTONE LAW FIRM, LLC**

Dated: May 30, 2025     By:     /s/ Joel A. Ready
                                Joel A. Ready, Esquire
                                PA Attorney I.D. # 321966
                                8500 Allentown Pike, Suite 3
                                Blandon, PA 19510
                                (610) 926-7875