# Exhibit A

# Exhibit A

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

Joyce Moll,

        Plaintiff,

v.

Berks Counseling Center, Inc.,

        Defendant.

Civil Action No.: 5:19-CV-00918-EGS

## BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, FOR RULE 41(b) SANCTIONS

NOW COMES Defendant, Berks Counseling Center, Inc., by and through undersigned counsel, who hereby files this Brief in Support of its Motion for Summary Judgment or, Alternatively, for Rule 41(b) Sanctions. Defendant offers the following:

## STATEMENT OF RELEVANT FACTS

### I.     Merits of the Case.

From July of 2014 until February 8, 2018, Joyce Moll worked as a Medical Assistant for the Berks Counseling Center, Inc. ("BCC"). [Ex. A, Defendant's Answer to Interrogatory No. 2]. On January 18, 2017, Ms. Moll applied to BCC Human Resources under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq. [Ex. B, at Bates Nos. 119-20]. She represented that she needed care for her parents in light of their serious health conditions, namely, dementia. She described the nature of her care as "to take to doctor Appts." [Id. at 115]. Ms. Moll provided a medical certification from her parents' physician, Dr. Brian Kane, M.D., who confirmed the diagnoses for the parents and certified that Ms. Moll was needed for "transportation to all medical treatments + visits." [Id. at 116]. Such were "as scheduled + as needed." [Id. at 117]. In essence,

1

"Parents have worsening medical conditions which require the employee to assist with transportation to accompany them to all medical appts." [Id.].

BCC approved Ms. Moll's request. On October 26, 2017, Ms. Moll renewed her FMLA request, and BCC approved it. [Ex. B, at Bates Nos. 111-12]. On February 5, 2018, Ms. Moll renewed her FMLA request, and BCC approved it. [Id. at 93-94]. Nothing in the record shows, and Ms. Moll does not contend, that BCC had ever denied any FMLA request by Ms. Moll.

BCC maintains a Cell Phones Policy. In general, "Personal calls are not to be used during work time," but employees can "make personal calls during breaks and meal periods," and must "ensure that friends and family members are aware of this policy." [Ex. B, at Bates No. 007].

For some time, Ms. Moll's supervisor was Jodi Lombardo. [Ex. A, Defendant's Answer to Interrogatory No. 4]. On September 6, 2017, Ms. Lombardo gave Ms. Moll a verbal warning for violating the Cells Phone Policy, with a copy of that policy. Ms. Lombardo explained, "Over the course of this past month Joyce has violated this policy on many occasions. On one such event she was on the phone for approximately an hour trying to get student loans for her child." [Ex. B, at Bates No. 33]. Ms. Lombardo informed Ms. Moll, "I was aware she has a FMLA for her parents as they are elderly and may need some emergent help. I informed Joyce that emergencies do arise and that she would be able to use her phone in such emergent situations." [Id.]. However, Ms. Moll was using her cell phone for non-emergent calls and also used the business phone line for personal calls, "Joyce denies this although I have witnesses to the fact." [Id.].

Ms. Moll signed a copy of the Policy and wrote, "I need my phone on me for my husband[,] Mother + Father." [Ex. B, at Bates No. 36]. All told, Ms. Moll received verbal or writing warnings over the Cell Phones Policy on September 12 and 15, 2017, October 11, 13, and 23, 2017, and January 12, 16, 22, and 24-25, 2018. [Ex. A, Defendant's Answer to Interrogatory No. 3].

2

Ms. Moll was also disciplined for disrespect and defiance toward supervisors, employees, and BCC clients. On July 29, 2015, Ms. Moll received a verbal warning, from Supervisor Rebecca Hartman, for using "loud and inappropriate profane language in the medical area," while "a group was in session in an adjacent room." [Ex. B, at Bates No. 55]. On Ms. Moll's 2017 Annual Performance Review, Ms. Lombardo acknowledged that "Joyce is very knowledgeable when it comes to her position," but "needs improvement on appropriately communicating with supervisor and certain clients." In particular, "When clients are disrespectful Joyce will sometimes react in an unprofessional way which sometimes leads to escalation in the client. Joyce also has been disrespectful to this supervisor and other superiors as well." [Id. at 57]. This was a potentially dangerous situation because "Joyce needs to be aware that sometimes she will increase a client's agitation when she becomes confrontational if the client is perceived to be disrespectful towards her. This could place her in an unsafe situation." [Id. at 58]. Additionally, "Joyce does need to learn to accept constructive criticism without becoming emotional in common areas, this leads to disruption of the medical department. Joyce is often overheard speaking about personal issues in the common areas which at times makes the staff uncomfortable." [Id.].

Ms. Lombardo also observed, "Joyce could be more productive were she to stay off her phone whether it be personal calls or looking at social media." [Ex. B, at Bates No. 58]. Also, "Joyce has been verbally warned twice about her cell phone usage. This issue has not been corrected." [Id.]. In the employee comments section, Ms. Moll expressed her disagreement with the evaluation but candidly admitted:

> I am a[n] emotional person my whole life and after 3 ½ years this is a problem[?] I believe we are all individuals and [if] being emotional is a fault, well then I am sorry. But I can not ch[an]ge me. I can leave the area or learn to channel it differently but I can not ch[an]g[e] me. That is why we are all different.

[Id. at 60 (alterations added)].

3

On or about January 25, 2018, Ms. Moll was warned about whether the latter was overheard speaking on the phone about seeing a movie. [Ex. B, at Bates No. 335]. In a conversation with Ms. Lombardo on February 2, 2018, "Joyce Moll denies that she takes personal calls on the business phone and declines to sign this written warning." [Id.] Although she declined to sign, Ms. Moll wrote an explanation of conduct, "I do disagree about me having my kids call me on my company (desk) phone + for that reason I just can't sign the papers because I feel by me signing I am admitting to having personal calls coming in.'" [Id.].

On February 8, 2018, Ms. Lombardo terminated Ms. Moll's employment. Filling out an Employee Termination Form, Ms. Lombardo checked the boxes for "Dishonesty" and "Other," and wrote out, "Telephone usage (personal during work hours), poor attitude, looking for job (posted on social media), dishonesty when related to personal phone calls." Ms. Lombardo further noted, "Joyce has been defiant, unwilling to take responsibility for her actions and has a poor attitude." [Ex. B, at Bates No. 334]. Ms. Moll filed suit on March 4, 2019, alleging that BCC interfered with her rights under the Family Medical Leave Act (FMLA), and retaliated against her, by "refusing to allow Plaintiff to communicate with her parents' treating physicians" and "terminating Plaintiff from employment within a close temporary proximity of her request for FMLA leave." [Compl. ¶ 22].

In Answers to Interrogatories, Ms. Moll recalls at work "that her daughter called her a few times to let her know about the status of her parents' health." [Ex. A, Answer to Interrogatory No. 11]. But her parents did not live in her household during the relevant times in question. [Id., Answer to Interrogatory No. 4]. Ms. Moll, herself, "was the contact person for her parents' health care providers." [Id., Answer to Interrogatory No. 13]. Finally, Ms. Moll recalls that she "received one call during work hours when her car was involved in an accident." [Id., Answer to

Interrogatory No. 12]. No further details are provided, such as the date when that occurred.

At the time of her termination from BCC's employ, Ms. Moll earned $16.23 an hour and worked an average of 40 hours per week. [Defendant Bates No. 139]. During this litigation, BCC learned for the first time that Ms. Moll was working a second job during the FMLA leave. By answers to interrogatories, Ms. Moll disclosed that, since May 5, 2016, she had been working part-time at Boscov's and is still employed there. [Answer to Interrogatory No. 22]. No details were provided as to her work schedule. Ms. Moll declined to answer a substantial number of interrogatories relating to the dates she rendered FMLA-related care, her absences from work at BCC, and which phone calls were personal or FMLA-related. *See* Parts II and III, *infra*.

**II.      Plaintiff's Nonparticipation in Discovery.**

This Part II is offered to the Court for purposes of whether dismissal under Civil Rule 42(b) is warranted. After the parties submitted a joint-Rule 26(f) Report, the Court entered a Scheduling Order dated June 6, 2019. The Order placed this case on an ordinary discovery track, with the discovery cut-off set for October 4, 2019 and dispositive motions due October 18, 2019.

By Answers to Plaintiff's Requests for Interrogatories, Defendant designated the dates that Ms. Moll received a written or verbal warning for infraction of the Cell Phones Policy. By Interrogatories propounded on Ms. Moll on July 22, 2019, BCC asked Ms. Moll the following:

> 9      During the FMLA Period, describe in detail all absences from your regularly scheduled employment with Defendant, indicating (a) whether you missed a full-day or a half-day of work; (b) whether or not you believe your absence was part of your intermittent FMLA leave; and (c) if part of your intermittent FMLA leave, then the details of the care that you provided.

> * * *

> 11.     During the FMLA Period, describe in detail each phone call you participated-in during Work Hours which you believe was FMLA-related, including the identity and phone number of the caller and the substance of the conversation.

12.　During the FMLA Period, describe in detail each phone call you participated-in during Work Hours which you believe was not FMLA-related, including the identity and phone number of the caller and the substance of the conversation.

13.　Based on your answers to Interrogatory Nos. 11 and 12, describe in detail why that phone call had to have occurred during Work Hours.

[Ex. A]. After requesting extensions, Ms. Moll answered on September 26, 2019. For No. 9, she objected to disclosing any non-FMLA related absences and did not provide a single date for each FMLA-related appointment. [Id.]. For No. 11, she answered, "Plaintiff does not recall every call she made during the relevant time period. She does recall that her daughter called her a few times to let her know about the status of her parents' health. Plaintiff recalls that hospitals and/or doctor's offices would call regarding appointments and updates." [Id.]. For No. 12, Ms. Moll answered, "Plaintiff received one call during work hours when her car was involved in an accident." [Id.]. No further details are provided.

Interrogatory No. 20 asked Ms. Moll to identify every medical provider of her parents that she needed to interact with during the FMLA leave. Ms. Moll answered by giving the name of Dr. Brian Kane," as well as an eye doctor, but did not provide any phone numbers and vaguely stated, "Multiple doctors, including a cardiologist at Reading Hospital," and "A surgeon, whose name Plaintiff does not recall, who performed surgery on her father related to colon cancer." [Ex. A, Answer to Interrogatory No. 20].

By requests for production of documents, BCC asked Ms. Moll to provide, "During and after your employment with Defendant, any job application submitted by you or any job advertisement to which you replied" [Ex. A, Answer to Interrogatory No. 14]; "During the FMLA Period, any and all medical records relating to your need to care for your parents" [id., Answer to Interrogatory No. 20); "During the FMLA Period, and whether written or electronic, any

appointment book, personal calendar, weekly-planner, or day-planner" [id., Answer to Interrogatory No. 21); "During the FMLA Period, all e-mails sent by you during work hours from any e-mail account that was not provided by Defendant, and subject to a limitation: If any such e-mail is privileged, then redact the contents other than the date, time, e-mail addresses, and identities of the sender and recipient" [id., Answer to Interrogatory No. 23].

To date, Ms. Moll has not provided any documents responsive to those requests.

At a conference with the Court in July of 2019, Ms. Moll provided a signed HIPAA authorization for BCC to include with a subpoena for the medical records of Ms. Moll's parents. The authorization directed Ms. Moll to provide the dates of birth for her parents, but she left this blank. [Ex. C]. The Tower Health Medical Group informed counsel for BCC, on August 22, 2019, that the subpoena could not be processed without the dates of birth, as there were more than one person with the same names as Ms. Moll's parents. Defendant's counsel and his staff promptly made a request to Ms. Moll's counsel, and, despite repeated requests, did not receive the requested information until September 20, 2019. [Ex. D]. After BCC renewed its request with the dates of birth, the Tower Health Medical Group informed counsel for BCC, on September 25, 2019—one week before the discovery deadline—that Ms. Moll did not have a medical Power of Attorney and therefore lacked authority to have signed the HIPAA authorization. [Ex. E-1].

Ms. Moll never served notice to depose any of BCC's witnesses.

By e-mail dated September 26, 2019, counsel for Ms. Moll finally suggested that Ms. Moll's deposition should be taken and asked if Defendant would stipulate to extend the discovery deadline. By letter dated September 27, 2019, counsel for BCC outlined all of the outstanding discovery deficiencies of Ms. Moll and detailed how such has materially prejudiced BCC's ability to prepare defenses, as well as any meaningful deposition practice. [Ex. E]. Counsel for BCC also

provided that, unless Ms. Moll cured these discrepancies, BCC could not respond to her request whether to stipulated for extending the discovery deadline. [Id. at 5]. Defendant offered to conditionally withdraw RFP Nos. 16-19 and 22, conditioned if Plaintiff could provide responses to the balance without objections. [Id. at 1-2]. BCC outlined the material prejudice for the absence of medical records:

> The medical records are critical to Defendant's defense because the same would corroborate all appointments that Plaintiff's parents had during the FMLA Period, thereby verifying that Plaintiff was not misusing her intermittent FMLA leave. The medical records would also corroborate what type of care the parents received during the FMLA Period, which correspond to what type of phone calls, and from whom, Plaintiff would be expected to receive in order to care for her parents. Now, in light of the fact that Ms. Moll does not have a medical POA, then the records would also verify who, exactly, is responsible for healthcare decisions for the parents in light of their lack of capacity and to whom Dr. Kane and his staff were authorized to contact in respect of protected health information, including doctor's appointments.

[Id. at 2]. For the interrogatories, BCC specifically pointed out that Ms. Moll was obligated to "identify," including by phone number, each of the medical providers for her parents:

> This leads to another problem—the fact that Defendant has to resort to internet research to find out what phone numbers are possibly FMLA related. Interrogatory No. 20 requested Plaintiff to "identify" every medical provider of her parents to whom Plaintiff interacted with during the FMLA leave. The instructions provided that in respect of "identify," to provide the phone number or business phone number, depending on whether the person was a natural person or a business. Plaintiff's answers to Interrogatory No. 20 did not do that at all. Thus, Defendant has no phone numbers with which to correlate Plaintiff's T-Mobile records, for purposes of verifying what calls were FMLA-related.

[Id. at 3]. For Interrogatory No. 12—that Ms. Moll identify all non-FMLA related phone calls during work hours, BCC offered a limitation to foster resolution: "Plaintiff may partially limit No. 12 to those non-FMLA related phone calls during Work Hours which Plaintiff contends were emergent or justified by necessity." [Id. at 4]. That would have allowed BCC to argue to the Court that all other calls during work hours were not FMLA-related and not justified by necessity.

8

By the close of business of October 4, 2019, Ms. Moll produced a few documents on other items, but not as detailed above. Neither did Ms. Moll amend or supplement her answers to interrogatories. BCC nevertheless waited two weeks before filing this Motion, without any further response from Plaintiff. By filing this Motion, BCC has withdrawn its conditional limits on the requested discovery from defense counsel's September 27, 2019 letter.

## III.    What Plaintiff's Cell Phone Records Show.

This Part III is offered to the Court for purposes of whether dismissal under Civil Rule 41(b) is warranted.

### A.    Plaintiff Averaged 1.5 Cell Phone Calls per Work Day.

Defendant obtained Plaintiff's cell phone records by subpoena, which span from August 12, 2017 until the date of termination: February 8, 2018, because T-Mobile, Inc. only retained two years' worth of records from the date of request (August 12, 2019). Defendant sorted the data under the following parameters:

(1)    Exclude all holidays.

(2)    Exclude all lunch breaks (i.e., 12:00 p.m. until 12:30 p.m.).

(3)    Exclude all text messages *received* during work hours.

(4)    Include all text messages *sent* during work hours.

(5)    Exclude all reported absences, as shown on limited timesheets produced to Plaintiff as Defendant Bates Nos. 484 to 426.

(6)    Exclude all phone calls that went to voicemail.

(7)    Include all phone calls answered or initiated ("outgoing") by Plaintiff during work hours (i.e., "Active Phone Calls").

Based on these parameters, Defendant produced summaries, (1) as shown in Exhibit F, showing 195 phone calls, totaling 18,574 seconds (309.57 minutes or 5.16 hours); (2) as shown in

Exhibit G, the same data is organized by virtue of the duration of the call, and, (3) as shown in Exhibit H, 101 text messages sent. Table 1, below, reflects an estimated number of phone calls and text messages that met such criteria:

| TABLE 1 | | | |
| --- | --- | --- | --- |
| ESTIMATED CELL PHONE ACTIVITY BY JOYCE MOLL DURING WORK HOURS (AUGUST 12, 2017—FEBRUARY 8, 2018) | | | |
| **Month** | **Active Phone Calls** | **Text Messages Sent** | **Work Days*** |
| 2017 August | 29 | 0 | 23 |
| 2017 September | 21 | 0 | 20 |
| 2017 October | 15 | 1 | 22 |
| 2017 November | 55 | 3 | 20 |
| 2017 December | 24 | 0 | 19 |
| 2018 January | 40 | 73 | 19 |
| 2018 February 1 — 8 | 9 | 36 | 5 |
| **Total** | **191** | **101** | **128** |
| *Note: Holidays and reported absences excluded | | | |

Table 1 remains an estimation because of Plaintiff's lack of participation in discovery (*see* Part II, *supra*). However, even as an estimation, Table 1 tells us the following about Ms. Moll's conduct: (1) She averaged 1.5 phone calls per work day; (2) as Ms. Moll became disciplined over the Cell Phones Policy in September and October of 2017, she increased her use of text-messaging, perhaps so that others wouldn't overhear the substance of the conversation; and (3) after a couple weeks lapsed since her reprimand on October 23 2017, Ms. Moll substantially increased her call volume for the month of November of 2017, showing no intent to correct her behavior.

The Court should bear in mind that Plaintiff was disciplined for taking personal calls on

her work-related phone number, in addition to her personal cell phone. Here, Ms. Moll averaged 1.5 calls per work day on her cell phone alone.

## B. Plaintiff Made Lengthy Personal Calls Coinciding with Her Reprimands.

Next, Defendant compared Exhibits F and G with the dates of Ms. Moll's reprimands and discipline, and discovered several patterns of behavior: (1) Ms. Moll took excessive calls on Monday's, where her work hours differed from the rest of the week, by having to work 11 a.m. until 8:30 p.m. and (2) the "half-truth" phenomena, where Ms. Moll engaged in lengthy personal calls on the same dates as possible FMLA-related calls.

As shown in Part I, *supra*, Ms. Moll received a reprimand for a Cell Phones Policy infraction on Monday, January 22, 2018. Exhibit F shows the following calls for that date:

| TABLE 2 | | | | |
|---|---|---|---|---|
| ACTIVE PHONE CALLS BY JOYCE MOLL ON MONDAY, JANUARY 22, 2018 | | | | |
| **Time** | **Duration (Seconds)** | **Incoming / Outgoing** | **Number** | **Caller Identity** |
| 2:07 p.m. | 8 | Incoming | 610-748-5020 | Unknown Personal Number. |
| 3:45 p.m. | 22 | Outgoing | 610-413-2970 | Unknown Personal Number. |
| **4:08 p.m.** | **40** | **Outgoing** | **484-628-5281** | **Possibly FMLA-related** |
| 4:20 p.m. | 11 | Incoming | 610-510-7317 | Unknown Personal Number. |
| **4:30 p.m.** | **595** | **Incoming** | **484-628-5281** | **Possibly FMLA-related** |
| 5:29 p.m. | 13 | Incoming | 610-876-1349 | Unknown Personal Number. |
| 6:05 p.m. | 72 | Incoming | 888-921-2342 | Unknown Personal Number. |
| **7:07 p.m.** | **385** | **Outgoing** | **866-677-1500** | **Fox Hills Cash** |
| 7:01 p.m. | 8 | Incoming | 610-523-8392 | Unknown Personal Number. |
| 8:22 p.m. | 19 | Incoming | 717-969-9296 | Unknown Personal Number. |

Table 2 shows the Court that Ms. Moll had numerous occasions where she could give a "half-truth," claiming that she needed her cell phone for FMLA purposes, but nevertheless failing to concede that she had non-FMLA related calls. Ms. Moll had nine other active phone calls on that same day, at least one of which <u>cannot</u> be FMLA-related. At 7:07 p.m., Ms. Moll dialed a business number, 866-677-1500, for a call that lasted 6.42 minutes, which from business directories Defendant identified as Fox Hills Cash, a private money-lender located in Batesland, South Dakota. [Ex. I]. That Ms. Moll *initiated* the call to Fox Hills Cash demonstrates her defiance, having been previously reprimanded over the Cells Phones Policy but continuing to flaunt it.

Table 2 also casts doubt on the timing of calls that are possibly FMLA-related, whether Ms. Moll was purposefully timing the same during work hours where otherwise not emergent. Here, Ms. Moll received a phone call at 4:30 p.m. from "484-628-5281," which on information and belief probably originated from the Tower Health Group or Reading Hospital. That would possibly make the call FMLA-related. However, Ms. Moll previously initiated a call to Tower Health Group earlier that same day, at 4:08 p.m. Thus, the Court can see that, if Ms. Moll had asked to be contacted, then Tower Health called her back *at her own request*. That demonstrates that, even from an FMLA-perspective, Ms. Moll has the potential to abuse her intermittent FMLA leave, if she had the ability to steer phone calls outside of work hours but chose not to.

As shown in Part I, supra, Ms. Moll received a reprimand for a Cell Phones Policy infraction on Wednesday, January 24, 2018—two days after the January 22nd infraction. Exhibit F shows the following calls for that date:

| TABLE 3 | | | | |
| --- | --- | --- | --- | --- |
| ACTIVE PHONE CALLS BY JOYCE MOLL ON WEDNESDAY, JANUARY 24, 2018 | | | | |
| Time | Duration (Seconds) | Incoming / Outgoing | Number | Caller Identity |
| 2:07 p.m. | 15 | Incoming | 610-704-9147 | Unknown Personal Number |
| 2:40 p.m. | 296 | Outgoing | 610-777-8332 | I.H.S. Fuels |
| 4:15 p.m. | 226 | Incoming | 443-992-0233 | Unknown Personal Number |
| 4:23 p.m. | 535 | Outgoing | 443-992-0233 | Unknown Personal Number |

As shown in Table 3, Ms. Moll initiated a call to 610-777-8332 for nearly five minutes, which from business directories Defendant identified as I.H.S. Fuels. [Ex. J]. Clearly, that call was not FMLA-related. Although the other calls for that date have not been identified, the Court can observe that these numbers do not belong to businesses, which means that they're probably not FMLA-related either. Additionally, the Court should observe that the calls at 4:15 and 4:23 p.m. involved the same phone number, for a combined total of 12.68 minutes.

As shown in Part I, supra, Ms. Moll received a reprimand for a Cell Phones Policy infraction on Tuesday, September 12, 2017. Exhibit F shows the following calls for that date:

| TABLE 4 | | | | |
| --- | --- | --- | --- | --- |
| ACTIVE PHONE CALLS BY JOYCE MOLL ON TUESDAY, SEPTEMBER 12, 2017 | | | | |
| Time | Duration (Seconds) | Incoming / Outgoing | Number | Caller Identity |
| 3:26 p.m. | 159 | Outgoing | 610-921-8034 | Muhlenberg Middle School |
| 3:30 p.m. | 11 | Outgoing | 610-790-3020 | Daughter K.M. |

As shown in Table 4, at 3:26 p.m., Ms. Moll dialed a business number, 610-921-8034, which from business directories Defendant identified as Muhlenberg Middle School. [Ex. K]. The second

phone number was identified through discovery as Ms. Moll's daughter, K.M. [Ex. A, Answer to Interrogatory No. 4]. Neither of these are FMLA-related. On Tuesday's, Ms. Moll had standard work hours of 8 a.m. until 4:30 p.m. [Id., Answer to Interrogatory No. 7]. In other words, Ms. Moll had roughly one-hour of work-time left when she made these calls, and could probably have waited until her shift was over before placing the calls.

## C.    Plaintiff's Behavior Remained Uncorrected.

Finally, the phone records also show Ms. Moll flagrantly *increasing* her call volume, if a couple weeks had lapsed without any reprimands. As shown on Exhibit F, the month of November of 2017 is illustrative: On November 7, 2017, at 3:24 p.m., Ms. Moll took a phone call from an unknown person that lasted 1197 seconds (19.95 minutes). [Ex F., Line 71]. On November 8, 2017, at 3:46 p.m., Ms. Moll initiated a phone call to an unknown person that lasted 1077 seconds (17.95 minutes). [Id., Line 72]. On November 10, 2017, 3:48 p.m., Ms. Moll took a phone call from an unknown person that lasted 1416 seconds (23.6 minutes). [Id., Line 78]. On November 15, 2017, Ms. Moll initiated a phone call at 1:21 p.m. to an unknown person that lasted 164 seconds (2.73 minutes) and, that same day, to another unknown person at 1:45 p.m. for 195 seconds (3.25 minutes). [Id., Lines 89-90]. On November 16, 2017, at 1:49 p.m., Ms. Moll initiated a phone call with an unknown person that lasted 563 seconds (9.38 minutes). [Id., Line 92]. By November 7, 2017 — the first of these calls for November — roughly two weeks had lapsed since Ms. Moll's previous reprimand on October 23, 2017.

## STANDARD OF REVIEW

A party is entitled to summary judgment where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

All reasonable inferences must be drawn in favor of the nonmoving party. Prowel v. Wise Bus. Forms, Inc., 579 F.3d 285, 286 (3d Cir. 2009).

## ARGUMENT

### I.  Plaintiff's Retaliation Claim Cannot Survive the *McDonnell Douglas* Framework.

FMLA claims of retaliation are assessed under the *McDonnell Douglas* burden-shifting framework. Capps v. Mondelez Global, LLC, 847 F.3d 144 (3d Cir. 2017) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)). A "plaintiff must first establish a prima facie case of discrimination," before the burden shifts to the defendant to "articulate a legitimate, non-discriminatory reason for the adverse employment action." Id. (quotation omitted). Afterwards, the burden shifts back to the plaintiff to prove, by a preponderance of the evidence, that the articulated reason was a mere pretext for discrimination." Id. (quotation omitted).

In Capps, the U.S. Court of Appeals for the Third Circuit adopted the "honest belief rule" as to FMLA retaliation claims, "Where an employer provides evidence that the reason for the adverse employment action taken by the employer was an honest belief that the employee was misusing FMLA leave, that is a legitimate, nondiscriminatory justification for the discharge." Id. at 152. The critical inquiry "is not whether the employee actually engaged in the conduct for which he was terminated, but whether the employer in good faith believed that the employee was guilty of the conduct justifying discharge." Id. at 153 (quotation omitted). "Thus when an employee is discharged because of an employer's honest mistake, federal anti-discrimination laws offer no protection." Id. at 154 (quotation omitted).

### A.  The Cell Phones Policy.

Here, the record shows that BCC terminated Ms. Moll, in part, under a belief that she was taking excessive personal calls during work hours that were neither emergent nor FMLA-related. Ms. Moll was also terminated for dishonesty, relating to her failure to truthfully admit the same

conduct. The record establishes that Ms. Moll was repeatedly warned about the Cell Phones Policy, and Ms. Moll admits to receiving such warnings but she disagreed with the facts. Where provided a written warning by her supervisor, Ms. Moll declined to sign and commented that "I feel by me signing I am admitting to having personal calls coming in." The record also establishes that the Cell Phones Policy did not contain any blanket prohibition of personal calls during scheduled breaks, and Ms. Moll's supervisor carefully delineated that the Policy was not applicable as to emergent, FMLA-related calls.

BCC has therefore articulated legitimate, nondiscriminatory justifications for the discharge of Ms. Moll's employment. BCC designated each date of Ms. Moll's infraction of the Cell Phones Policy. For Ms. Moll to have established a prima facie case, and to have rebutted BCC's reasons as pretextual, Ms. Moll was obligated to have reviewed her phone records and to have designated each and every phone call during work hours, for each date of the infraction, that she maintains was either emergent or FMLA-related. She did not do so. The Court should also be impressed with the fact that if Ms. Moll's phone records showed non-FMLA related calls during work hours, *but may have otherwise been justified under the circumstances*, her failure to truthfully admit to the fact of the personal call still constitutes dishonesty where she categorically denied taking any personal calls.

Even if the Court assumes that Ms. Moll could establish a prima facie case, she nevertheless cannot prevail in showing that BCC's decision to terminate her employ was pretextual. BCC designated 10 dates of infraction of the Cell Phones Policy: September 12 and 15, 2017, October 11, 13, and 23, 2017, and January 12, 16, 22, and 24-25, 2018. Ms. Moll acknowledges that one day she took a personal call because her vehicle was in a car accident. She did not provide the date, in order to show that it coincided with the dates of her infractions of the Cell Phones Policy, but,

even so, that was a singular occurrence involving one day, not 10. An inference is too remote and attenuated that Ms. Moll's vehicle was involved in a car accident on 10 separate occasions, each coinciding with the infraction of the Cell Phones Policy.

Ms. Moll never admitted to BCC that she took personal calls during work hours. Where provided a written warning by her supervisor, Ms. Moll declined to sign and commented that "I feel by me signing I am admitting to having personal calls coming in." Where Ms. Moll was provided a copy of the Cell Phones Policy, she commented, "I need my phone on me for my husband[,] Mother + Father." Now, however, during this litigation Ms. Moll answered interrogatories and remembered "that her daughter called her a few times to let her know about the status of her parents' health." Ms. Moll does not disclose which of her two daughters she is referring to, but the Court does not have to discount Ms. Moll's credibility in order to render summary judgment in favor of BCC. Even accepting that assertion as true for the sake of argument, it does not overcome BCC's honest belief that Ms. Moll was taking nonemergent and non-FMLA related phone calls during work hours in violation of the Cell Phones Policy.

The record does not establish that the medical providers for Moll's parents had HIPAA authorization to communicate with Moll's daughters in respect of protected information. Ms. Moll admits by answers to interrogatories that her parents did not reside in her household during the relevant times in question. It was only Ms. Moll, herself, who was the contact person for her parents' health care providers. Where completing the FMLA requests, Ms. Moll explained that her need to care for her parents involved taking them to doctor's appointments. Dr. Kane, likewise, certified that Ms. Moll was needed to transport and to accompany the parents to all medical appointments.

At no point did Ms. Moll represent to BCC why her need to transport her parents to medical

appointments and, by reasonable inference, to schedule medical appointments for her parents, *required phone calls from her daughters during work hours*. The record does not establish why Ms. Moll's daughters were involved in the process of caring for Ms. Moll's parents, and the Court cannot even draw reasonable inferences to such effect since Ms. Moll's parents <u>did not</u> reside in the same household as Ms. Moll's daughters. Consequently, if the daughters hypothetically had some modicum of involvement in the care of Ms. Moll's parents, BCC's mistaken belief remains reasonable since the daughters were not involved in scheduling medical appointments and accompanying Ms. Moll to those appointments, i.e., the scope of the FMLA leave. Ms. Moll's recollection only involved that her daughter called "to let her know about the status of her parents' health." That, in itself, is not emergent. Ms. Moll can have nonemergent conversations with her daughters about the status of her parents' health *after* work hours. Ms. Moll does not represent that her daughter called relative to a medical emergency concerning Ms. Moll's parents.

Ms. Moll cannot expand the scope of her FMLA leave during litigation. Based on the forgoing, there is no genuine issue of material fact that Ms. Moll can show that BCC terminated her employ under a pretext, and BCC is therefore entitled to judgment as a matter of law.

**B.      Disrespect and Defiance.**

The record also establishes that Ms. Moll had difficulty controlling her emotional outbursts towards supervisors, employees, and even clients of BCC. Ms. Moll was specifically evaluated by her supervisor and warned that such conduct was unprofessional and "sometimes leads to escalation in the client" and "could place her in an unsafe situation." Additionally, "Joyce does need to learn to accept constructive criticism without becoming emotional in common areas, this leads to disruption of the medical department. Joyce is often overheard speaking about personal issues in the common areas which at times makes the staff uncomfortable."

BCC has therefore articulated legitimate, nondiscriminatory justifications for the discharge

of Ms. Moll's employment. Ms. Moll is unable to show, from the record, why that was pretextual.

First, she was disciplined for similar conduct in 2015 by a different supervisor, Rebecca Hartman.

Ms. Moll cannot claim that this was some discriminatory animus by Joyce Lombardo. Second, in

the employee comments section to Ms. Lombardo's annual performance review, Ms. Moll

expressed her disagreement with the evaluation but candidly admitted:

> I am a[n] emotional person my whole life and after 3 ½ years this is a problem[?] I
> believe we are all individuals and [if] being emotional is a fault, well then I am
> sorry. But I can not ch[an]ge me. I can leave the area or learn to channel it
> differently but I can not ch[an]g[e] me. That is why we are all different.

Consequently, Ms. Moll admits to the conduct but never improved her performance because she

didn't believe that controlling her emotions was a valid criticism or something that can and should

be acted on by herself. Consequently, based on such statement, Ms. Moll cannot explain away that

her defiance and disrespect towards others were pretextual grounds for her discharge.

## II. Interference with FMLA Rights.

In claims of interference of FMLA rights, the *McDonnell-Douglas* burden-shifting

framework does not apply because it "is not about discrimination, it is only about whether the

employer provided the employee with the entitlements guaranteed by the FMLA." Capps v.

Mondelez Global, LLC, 847 F.3d 144, 155 (3d Cir. 2017) (quotation omitted). Interference occurs

where an eligible employee is denied FMLA benefits. Id. (quotation omitted).

In Capps, the Third Circuit drew a distinction where termination of employment does not

constitute interference with FMLA rights. Where, as here, (1) the employee requested and was

approved for FMLA benefits and (2) began receiving, and was already receiving, those benefits at

the point of termination, then as a matter of law there is no interference. Id. at 155-56 & n.11

(distinguishing Erdman v. Nationwide Ins. Co., 582 F.3d 500 (3d Cir. 2009)). This distinction

reflects the gravamen of an interference claim that, "to be viable, the plaintiff must show that

FMLA benefits were actually withheld." Id. at 156 (quotation omitted). Here, the record shows that BCC approved all of Ms. Moll's FMLA requests, even at the point of her termination of employment. Since Ms. Moll received all that she was entitled to have under the FMLA, and where she actually was receiving the benefits of such, then she cannot prevail on the ground that BCC interfered with her rights by terminating her employment. She is stuck with a retaliation claim only, which also fails.

### III.    Alternatively, Ms. Moll Should be Sanctioned under Civil Rule 41(b).

Alternatively, if the Court should decline to enter summary judgment on the merits, then it should sanction Ms. Moll for her nonparticipation in discovery by dismissing this suit. "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b).

> The power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts. The power is of ancient origin, having its roots in judgments of nonsuit and non prosequitur entered at common law, and dismissals for want of prosecution of bills in equity.

Link v. Wabash R. Co., 370 U.S. 626, 629 (1962) (internal citations deleted). "'Failure to prosecute' under the rule does not mean that the plaintiff must have taken any positive steps to delay the trial or prevent it from being reached by the regular machinery of the court. *It is quite sufficient if he does nothing*, knowing that until something is done there will be no trial." Adams v. Trustees of the N.J. Brewery Employees' Pension Trust Fund, 29 F.3d 863, 874 (3d Cir. 1994) (quoting Bendix Aviation Corp. v. Glass, 32 F.R.D. 375, 377 (E.D. Pa. 1962) (emphasis added)). "Extensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response to interrogatories, or consistent tardiness in complying with court orders." Id. (citations omitted). The Court must consider a six-factored test:

(1) the extent of the party's personal responsibility; (2) the prejudice to the

adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

Curtis T. Bedwell & Sons, Inc. v. International Fidelity Ins. Co., 843 F.2d 683, 691 (3d Cir. 1988) (quotation omitted).

Here, Ms. Moll did not produce responsive documents in her possession, gave incomplete answers to interrogatories, thwarted BCC's efforts to subpoena medical records by causing BCC to believe she had authority to sign HIPAA authorizations, did not notice the depositions of any BCC witness, did not suggest her own deposition until one week before the discovery cutoff, and rendered any deposition of herself pointless by refusing to meaningfully respond to discovery. Defendant has not contributed to any delays. In fact, Defendant liberally granted Plaintiff's requests for extensions on answering discovery, and demanded that Plaintiff cure the discovery deficiencies, with a detailed letter, before contemplating whether to stipulate to extend the discovery cutoff. In that letter, the Defendant limited and conditionally withdrew several of its discovery requests for the sake of promoting resolution. Where Defendant requested evidence necessary *for Plaintiff* to have substantiated her claims, then it should not have been Defendant's obligation to compel such by motion practice. There's no suggestion that Plaintiff's counsel is at fault, as it appears to be a lack of cooperation of Plaintiff herself.

What Ms. Moll failed to produce in discovery is substantially prejudicial to Defendant. Because Ms. Moll was working a second job during the FMLA period (i.e., Boscov's since May 5, 2016), BCC has incurred substantial prejudice whether Ms. Moll was misusing her FMLA leave for purposes of her second employment. BCC is substantially prejudiced, therefore, by Ms. Moll's failure to designate her non-FMLA related absences from work and to produce her parents'

medical records to substantiate the care that they received during the FMLA period and who was authorized under HIPAA to communicate with the medical providers.

In the Complaint, Ms. Moll seeks relief, inter alia, compensatory damages for "past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions and seniority." [Compl. Wherefore Cl. B]. Defendant propounded a First Set of Requests for Production of Documents ("RFP"), asking Ms. Moll to produce, inter alia, "During and after your employment with Defendant, any job application submitted by you or any job advertisement to which you replied." Ms. Moll did not produce any documents responsive to that request. By Answers to Interrogatories, Ms. Moll disclosed the following:

> Plaintiff received Unemployment Compensation. On May 5, 2016 she began working part-time in customer service for Boscov's. She makes $10.20 per hour and is still presently working there. In or about February 2018, Plaintiff worked part-time for Sheetz as a Cashier, for approximately four weeks, and earned $10.20 per hour. From about August 2019 through the present, Plaintiff gained part-time employment at Lowes working in Customer Service making $13.25 per hour.

[Ex. A, Answer to Interrogatory No. 22]. Where Ms. Moll did not substantiate her efforts to find full-time employment in her field, BCC has incurred substantial prejudice whether she made a decision to care for a parent on a full-time basis and wants BCC to subsidize her change in career.

Finally, the Court has to weigh alternative sanctions and, finally, the meritoriousness of the claim or defense. Here, based on Statement of Facts, Part III, *supra*, the Court should find that if Ms. Moll had participated in discovery, then BCC would have established that she was regularly engaging in non-FMLA related phone calls during work hours. Ms. Moll did not designate which phone calls were FMLA-related, or otherwise emergent, because that would involve conceding numerous other calls that were neither. Ms. Moll did not produce her text-messages, as requested by Defendant, because the contents of those will probably show that they're personal and not FMLA-related. Consequently, Plaintiff has willfully chosen not to participate in discovery,

22

because she was unlikely to prevail on the merits. For that reason, a lesser sanction is not adequate. There is no point in protracting a case on Plaintiff's behalf, if Plaintiff has done nothing to prove a meritorious case and, by failing to meaningfully participate in discovery, has prevented Defendant from fully establishing available defenses.

## **CONCLUSION**

The Court should enter summary judgment in favor of Defendant Berks Counseling Center, Inc. and against Plaintiff Joyce Moll, and dismiss the entirety of the Complaint with prejudice. Alternatively, the Court should sanction Ms. Moll under Fed. R. Civ. P. 41(b) by dismissing the Complaint with prejudice.

**CORNERSTONE LAW FIRM, LLC**

Dated: October 18, 2019     By:     /s/ David W. Crossett
                                     David W. Crossett, Esquire
                                     Penna. Attorney I.D. #313031
                                     8500 Allentown Pike, Ste 3
                                     Blandon, PA 19510
                                     P (610) 926-7875
                                     F (484) 930-0054
                                     david@cornerstonelaw.us
                                     *Counsel for Defendant*

Exhibit B

Exhibit B



# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

Joyce Moll,

     Plaintiff,

v.

Berks Counseling Center

     Defendant.

Case No. **19** __ __ **918**

JURY TRIAL DEMANDED

## COMPLAINT

NOW COMES Plaintiff, Joyce Moll (hereinafter referred to as "Plaintiff") and files this Complaint alleging as follows:

### NATURE OF THE ACTION

1.    Plaintiff initiates this action to redress violations of Berks Counseling Center (hereinafter referred to as "Defendant") the of the Family Medical Leave Act ("FMLA" – 29 U.S.C. §§ 2601, *et seq.*).

### JURISDICTION AND VENUE

2.    This action is initiated pursuant to federal law. The United States District Court for the Eastern District of Pennsylvania has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under the laws of the United States.

3.    This Court may properly maintain personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard

1

set forth by the United States Supreme Court in <u>International Shoe Co. v. Washington</u>, 326 U.S. 310 (1945) and its progeny.

4.     Venue is properly laid in this District pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2) because Defendant resides in and/or conducts business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## PARTIES

5.     The forgoing paragraphs are incorporated in their entirety as if set forth in full.

6.     Plaintiff is an adult individual with a primary residence located at 1733 Rammich Road, Temple, PA 19560.

7.     Defendant is a business corporation with a regular place of business located at 645 Penn Street, Reading, PA 19601.

8.     At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with Defendant.

## FACTUAL BACKGROUND

9.     The forgoing paragraphs are incorporated in their entirety as if set forth in full.

10.     Plaintiff was hired by Defendant as a Medical Assistant on about July 21, 2014.

11.     In about March of 2017, Plaintiff applied for intermittent FMLA leave due to her parents' serious health conditions. Specifically, Plaintiff's father was suffering from Alzheimer's disease and her mother was suffering from dementia.

12.     In connection with her FMLA leave and need to care for her parents, Plaintiff would need to frequently be available to receive phone calls from her parents' treating physicians.



Plaintiff therefore would occasionally accept phone calls from her parents' treating physicians on her cell phone during work hours.

13. Plaintiff advised Defendant's management level employees, including Jodi Lombardo ("Ms. Lombardo") of her need to accept calls from her parents' treating physicians during work hours.

14. In about May or June of 2017, Ms. Lombardo told Plaintiff that she was not permitted to use her cell phone during work hours.

15. As a result of Ms. Lombardo's refusal to allow Plaintiff to use her cell phone, Plaintiff provided her parents' treating physicians with her work number.

16. On about February 9, 2018, Plaintiff was terminated from employment. At that time, Ms. Lombardo told Plaintiff that she was being terminated for taking personal calls at work.

17. As described in detail above, Plaintiff did not take personal calls while at work, but rather, only took calls that were related to her parents' serious health conditions and her intermittent FMLA leave.

## Count I
## Violations of the FMLA
## (Interference & Retaliation)

18. The forgoing paragraphs are incorporated in their entirety as if set forth in full.

19. Defendant is an employer under the FMLA, as Defendant is engaged in commerce and/or activities affecting commerce and employed fifty (50) or more employees.

20. At all times relevant herein, Plaintiff was an FMLA eligible employee as he: 1) worked for Defendant for at least twelve (12) months; 2) worked at least 1,250 hours for Defendant in the twelve (12) months prior to the start of his FMLA leave; and 3) worked at a location where at least fifty (50) employees were employed within seventy-five (75) miles.

3



21.     Plaintiff exercised her rights under the FMLA, as he requested, and was approved for FMLA leave.

22.     Defendant interfered with Plaintiff's FMLA rights and retaliated against Plaintiff by: 1) refusing to allow Plaintiff to communicate with her parents' treating physicians; and 2) terminating Plaintiff from employment within a close temporal proximity of her request for FMLA leave.

23.     The forgoing conduct constitutes violations of the FMLA.

**WHEREFORE**, Plaintiff prays that this Honorable Court enter an order that:

A.     Defendant is to be prohibited from continuing to maintain its illegal policy, practice or custom of discriminating/harassing/retaliating against employees and is to be ordered to promulgate and effective policy against such unlawful acts and to adhere thereto;

B.     Defendant is to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions and seniority. Plaintiff should be accorded those benefits illegally withheld from the date she first suffered retaliation at the hand of Defendant until the date of verdict;

D.     Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate, including but not limited to liquidated damages;

E.     Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable law;

4



F.    Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable law; and

G.    Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff also has endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully Submitted,

Jonathan W. Chase, Esq.
**KRAEMER, MANES &**
**ASSOCIATES LLC**
PA ID: 312448
1628 JFK Blvd.
Suite 1650
Philadelphia, PA 19103
(215) 475 3504 Direct
(215) 734 2466 Fax
jwc@lawkm.com

5

JS 44 (Rev 06/17)

**CIVIL COVER SHEET**

5:19-918

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Joyce Moll | Berks Counseling Center |

**(b)** County of Residence of First Listed Plaintiff **Berks**
*(EXCEPT IN U S PLAINTIFF CASES)*

County of Residence of First Listed Defendant **Berks**
*(IN U S PLAINTIFF CASES ONLY)*
NOTE IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** Attorneys *(Firm Name Address, and Telephone Number)*
Jonathan Chase, Esq. - Kraemer, Manes & Associates LLC
1628 JFK Blvd., Suite 1650, Philadelphia, PA 19103
(215) 475 3504 Direct

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1 U S Government Plaintiff
- ☒ 3 Federal Question *(U S Government Not a Party)*
- ☐ 2 U S Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*    Click here for Nature of Suit Code Descriptions

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | **PERSONAL INJURY** ☐ 365 Personal Injury - Product Liability | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 367 Health Care/ Pharmaceutical | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Personal Injury Product Liability | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| | | **LABOR** | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | ☐ 710 Fair Labor Standards Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | ☐ 720 Labor/Management Relations | | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☒ 751 Family and Medical Leave Act | ☐ 870 Taxes (U S Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 790 Other Labor Litigation | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer w/Disabilities - Employment | ☐ 791 Employee Retirement Income Security Act | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer w/Disabilities - Other | **IMMIGRATION** | | |
| | ☐ 448 Education | ☐ 462 Naturalization Application | | |
| | **PRISONER PETITIONS** | ☐ 465 Other Immigration Actions | | |
| | **Habeas Corpus:** | | | |
| | ☐ 463 Alien Detainee | | | |
| | ☐ 510 Motions to Vacate Sentence | | | |
| | ☐ 530 General | | | |
| | ☐ 535 Death Penalty | | | |
| | **Other:** | | | |
| | ☐ 540 Mandamus & Other | | | |
| | ☐ 550 Civil Rights | | | |
| | ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**
Cite the U S Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*
29 U.S.C. §§ 2601, et seq.
Brief description of cause
Family Medical Leave Act ("FMLA")

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F R Cv P
DEMAND $
CHECK YES only if demanded in complaint
JURY DEMAND: ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY**
*(See instructions)*
JUDGE _____ DOCKET NUMBER _____

MAR - 4 2019

DATE 02/14/2019

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG JUDGE _____

JS 44 Reverse (Rev 06/17)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows.

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)"

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.)**

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**19    918**

## DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: 1733 Rammich Road, Temple, PA 19560

Address of Defendant: 645 Penn Street, Reading, PA 19601

Place of Accident, Incident or Transaction: 645 Penn Street, Reading, PA 19601

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions

| | | | |
|---|---|---|---|
| 1 | Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? | Yes ☐ | No ✔ |
| 2 | Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? | Yes ☐ | No ✔ |
| 3 | Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court? | Yes ☐ | No ✔ |
| 4 | Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual? | Yes ☐ | No ✔ |

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE 02/14/2019    _____    312448
*Attorney-at-Law / Pro Se Plaintiff*    *Attorney I D # (if applicable)*

---

**CIVIL:** (Place a ✓ in one category only)

**A.    Federal Question Cases:**

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☐ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☑ 11. All other Federal Question Cases
     *(Please specify)* _____ FMLA _____

**B.    Diversity Jurisdiction Cases:**

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify)* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
     *(Please specify)* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration )*

I, Jonathan Chase, Esq. , counsel of record or pro se plaintiff, do hereby certify

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000 00 exclusive of interest and costs

☐ Relief other than monetary damages is sought

MAR -4 2019

DATE 02/14/2019    _____    312448
*Attorney-at-Law / Pro Se Plaintiff*    *Attorney I D # (if applicable)*

NOTE  A trial de novo will be a trial by jury only if there has been compliance with F R C P 38

Civ 609 (5/2018)



## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

Joyce Moll

v.

Berks Counseling Center

CIVIL ACTION

NO. **19 918**

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. ( X )

| 2/14/2019 | Jonathan Chase, Esq. | Joyce Moll |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 475 3504 Direct | (215) 734 2466 Fax | jwc@lawkm.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

MAR - 4 2019

### Civil Justice Expense and Delay Reduction Plan
### Section 1:03 - Assignment to a Management Track

(a) The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b) In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management. In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c) The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d) Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e) Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

### SPECIAL MANAGEMENT CASE ASSIGNMENTS
#### (See §1.02 (e) Management Track Definitions of the
#### Civil Justice Expense and Delay Reduction Plan)

Special Management cases will usually include that class of cases commonly referred to as "complex litigation" as that term has been used in the Manuals for Complex Litigation. The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985. This term is intended to include cases that present unusual problems and require extraordinary treatment. See §0.1 of the first manual. Cases may require special or intense management by the court due to one or more of the following factors: (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition. It may include two or more related cases. Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases, common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues. See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.

# Exhibit C

# Exhibit C

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSYLVANIA

Joyce Moll,

    Plaintiff,

    Case No. 5:19-cv-00918-EGS

v.

Berks Counseling Center

    JURY TRIAL DEMANDED

    Defendant.

## JOINT STIPULATION OF DISMISSAL WITH PREJUDICE

Pursuant to Rule 41(a)(1)(ii), the Parties hereby jointly stipulate, through their respective counsel, to dismiss this matter with prejudice, and without costs or fees against any party.

Respectfully Submitted,

*/s/ Jonathan W. Chase*
Jonathan W. Chase, Esq.
Ruppert Manes Narahari
1628 JFK BLVD
Suite 1650
Philadelphia, PA 19103
(215) 475 3504
jc@rmn-law.com
*Attorney for Plaintiff*

*/s/ David W. Crossett*
David W. Crossett, Esq.
Cornerstone Law Firm
8500 Allentown Pike, Suite 3
Blandon, PA 19510
Harrisburg, PA 17101
(610) 926-7875
david@cornerstonelaw.us
*Attorney for Defendant*

SO ORDERED:

_____
Edward G. Smith
United States District Judge

10/29/2019

The clerk of court shall mark this case as closed.